*In re* MARRIAGE OF ILYSE SASSANO, Petitioner-Appellee, and VINCENT ALLEN SASSANO, Respondent-Appellant.

Second District   No. 2—01—0951

Opinion filed March 13, 2003.—Rehearing denied April 7, 2003.

Vincent Allen Sassano, of Barrington, for appellant.

Jon L. Beermann, of Beermann & de Bruyne, of Libertyville, and Lyle B. Haskin and Barbara Ann Corrigan, both of Haskin & Corrigan, L.L.C., of Wheaton, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Respondent, Vincent Allen Sassano, appeals from the circuit court's orders (1) denying his petition to modify his unallocated child support and maintenance obligation to petitioner, Ilyse Sassano, and (2) finding that he failed to pay petitioner pursuant to the parties' marital settlement agreement. We affirm.

## FACTS

The parties' marriage was dissolved on June 7, 2000, and the trial court entered a judgment incorporating a settlement agreement setting respondent's obligation to pay petitioner $4,632 per month. The monthly obligation included $3,176 for unallocated child support and maintenance, $800 for a debit account for the parties' two minor children, and $656 for petitioner's predicted federal and state tax liability. The agreement did not specify respondent's income at the time of the dissolution.

The parties agreed to joint custody, and petitioner was designated as the "residential parent." They also agreed to meet annually to discuss the children's changing needs. The agreement further provides in relevant part:

> "Although [the parties] have conducted some informal discovery, [they] have decided to enter into this Marital Settlement Agreement without such formal discovery and without formal investigation of the assets, liabilities, of their joint or mutual assets, of his

or her own assets, and of the assets of the other party to enter into this Marital Settlement Agreement. They each acknowledge that they are entering into this Marital Settlement Agreement despite the known and unknown assets, income, or liabilities of the other. Each enters this Agreement willingly and waives any right, title, claim, or interest that she or he may have based on lack of disclosure by the other or insufficient knowledge of the assets or income of the other.

\* \* \*

The amount that [respondent] pays [petitioner] as unallocated maintenance and support from June 10, 2000, to September 1, 2004, shall not terminate upon either [petitioner's] remarriage or cohabitation on a continuing conjugal basis, although it shall terminate upon either her death or [respondent's] death. Neither shall the support be modifiable for any reason during that period, and, if [petitioner] seeks, before 9/1/04, to modify support or child support, then this unallocated maintenance and support shall automatically terminate as of the date of her filing any petition for modification or the like, and child support shall be set at that time at the then statutory amount for the number of children then residing primarily with [petitioner]. If not otherwise terminated according to this paragraph, maintenance terminates completely with the final payment of unallocated maintenance and support on 9/1/04."

At the prove-up hearing, respondent testified that he knew, if the matter went to trial, a judge would likely order him to pay petitioner less than he was agreeing to pay under the settlement. Respondent asserted that he was currently self-employed and had "made a full disclosure of all the assets [he] acquired during the marriage," but he did not specify his current salary. The trial court then entered the judgment adopting the settlement agreement.

On November 8, 2000, five months after the dissolution, respondent filed a petition to modify support pursuant to section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/510(a) (West 2000)). Respondent alleged that one of his clients had ended his employment, which created a substantial change in circumstances. Petitioner then filed two petitions for rules to show cause, alleging that respondent had failed to fund the debit account and pay support.

In April 2001, the court conducted a hearing on the petitions. Respondent testified that, from January to May 2000, he worked only as a computer consultant for a company called Christianity Today. However, on May 15, 2000, respondent also began serving as the chief technology officer of OneBlueWorld.com, a computer software

company. Respondent's second job increased his projected annual gross income from approximately $80,000 to $202,000. On June 7, 2000, the marriage was dissolved pursuant to the marital settlement agreement in which respondent did not disclose the additional income.

Respondent further testified that he remarried on September 20, 2000, and that his new wife earned nearly $100,000 per year. On October 15, 2000, OneBlueWorld.com terminated respondent's employment after retaining another company to perform respondent's duties. Soon thereafter, respondent began working exclusively for Christianity Today as the director of information technology, and his salary at the time of the hearing was $70,000. Around the time of his employment change, respondent learned that he owed an additional $50,000 in past-due taxes.

On cross-examination, respondent admitted that he and petitioner personally negotiated some of the terms of the marital settlement agreement in May 2000, but he denied that he stated during the negotiations that he earned only $80,000 annually. However, he admitted that he did not disclose his full employment to petitioner, any of her representatives, his attorney, or the court before the marriage was dissolved. Respondent's counsel testified that he was unaware of respondent's additional income before the dissolution.

Todd McMeen, the chief executive officer of OneBlueWorld.com, testified that he and respondent negotiated for two to three months before respondent began his employment on May 15, 2000. McMeen hired respondent on a month-to-month basis with the expectation that it would be a "long-term" relationship because "there was plenty of work to go around." However, respondent was terminated on October 15, 2000, because his services were no longer needed.

Over respondent's objection, the trial court admitted a February 2, 2000, letter from respondent's counsel to petitioner's counsel, stating that respondent expected to earn only $80,000 in the year 2000. The court also admitted a May 2, 2000, letter from respondent's counsel to petitioner's counsel, indicating that respondent and petitioner had been personally negotiating a settlement during the final two weeks of April 2000. Petitioner then testified that, during settlement negotiations in May 2000, respondent stated that his annual salary was $80,000.

On April 9, 2001, the trial court denied the petition to modify support and found respondent to be in contempt for underfunding the debit account by $5,735 and owing $13,349 in past-due support through April 2001. The court found that respondent's employment with OneBlueWorld.com was "a fact known only to him" at the time of the dissolution and that respondent could not use his termination

from that job to prove a substantial change in circumstances because it was not in the record or disclosed during discovery. The trial judge also stated, "I fault the lawyers and the court for not fixing what the income was. \*\*\* And I don't believe that [respondent] can sit there and remain silent essentially with a wad of cash in his sock that he doesn't tell anybody about." The court denied the petition because respondent's current salary of $70,000 was not substantially less than the $80,000 portion of his salary that he disclosed during the settlement negotiations.

Respondent filed a motion to reconsider, and the motion was denied on May 14, 2001. On May 31, 2001, petitioner filed a petition for fees and costs pursuant to section 508 of the Act (750 ILCS 5/508 (West 2000)). The trial court continued the case so the parties could negotiate a settlement, and, at a subsequent hearing, petitioner insisted that respondent should not be allowed to purge the contempt finding.

On July 25, 2001, the court vacated the contempt finding but noted that respondent still owed the arrearage. The court also found no just reason to delay enforcement or appeal of the judgment under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Respondent filed his notice of appeal on August 21, 2001.

## ANALYSIS

Petitioner moved to dismiss the appeal, respondent objected, and we ordered the motion and objections to be taken with the case. Petitioner contends that respondent's notice of appeal is either (1) late because it was filed more than 30 days after the order denying the motion to reconsider or (2) premature because petitioner's petition for fees and costs was still pending at the time the notice of appeal was filed. Respondent argues that his right to appeal accrued on July 25, 2001, when the trial court entered its written finding pursuant to Rule 304(a). We note that petitioner's statement of facts on this issue is inadequate and misleading because it fails to mention the July 25, 2001, order and the Rule 304(a) finding therein. See 188 Ill. 2d R. 341(e)(6).

■ Rule 304(a) provides that "[i]f multiple \*\*\* claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the \*\*\* claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. \*\*\* In the absence of such a finding, any judgment that adjudicates fewer than all the claims \*\*\* is not enforceable or appealable \*\*\*." 155 Ill. 2d R. 304(a).

Appellate jurisdictional issues in dissolution of marriage proceedings are inherently problematic because the proceedings involve many separate issues that are not always decided at the same time in the trial court.

■ Ordinarily, " 'issues raised in a dissolution-of-marriage case are not separate claims and therefore not appealable under Rule 304(a).' " *In re Marriage of Semonchik*, 315 Ill. App. 3d 395, 401 (2000), quoting *In re Marriage of Leopando*, 96 Ill. 2d 114, 120 (1983). Here, however, the judgment of dissolution was entered on June 7, 2000, and that order was final and appealable because it did not reserve any issues for later determination. Therefore, when respondent filed his motion to modify support on November 8, 2000, he initiated a new proceeding. See *Semonchik*, 315 Ill. App. 3d at 401.

In *In re Marriage of Piccione*, 158 Ill. App. 3d 955 (1987), the parties' marriage was dissolved and no matters were reserved for later determination. Three years later, the petitioner filed a petition to increase support and for attorney fees, and the trial court increased the respondent's support obligation. However, the petitioner was dissatisfied with the result, and she appealed from the orders setting support before the issue of attorney fees was resolved. Petitioner contended that the child support orders were final and appealable because the attorney fees issue was an ancillary question. We stated that, because attorney fees are integrally related to decisions regarding the financial status of the parties, the trial court should allocate the fees before a reviewing court assesses the trial court's decision regarding the underlying orders setting child support. *Piccione*, 158 Ill. App. 3d at 963. We then concluded that we lacked jurisdiction to review the child support orders because the record contained no finding of finality pursuant to Rule 304(a). *Piccione*, 158 Ill. App. 3d at 963-64.

■ The facts of this case and *Piccione* are very similar. However, this case is distinguishable because the trial court entered the express written finding as required by Rule 304(a) and respondent filed his notice of appeal within 30 days of the finding. Therefore, we conclude that we have jurisdiction to review the denial of respondent's motion to modify support, and we deny petitioner's motion to dismiss the appeal.

Turning to the merits of the appeal, we must determine (1) whether the settlement agreement's nonmodification clause is valid, (2) whether petitioner was required to allege fraud and estoppel in a responsive pleading, (3) whether the trial court erroneously admitted evidence of the parties' settlement negotiations, and (4) whether the court abused its discretion in denying respondent's petition to modify support.

■ The judgment of dissolution includes a nonmodification provision in which the parties agreed that respondent's unallocated maintenance and child support obligation could not be modified from June 10, 2000, to September 1, 2004. In fact, the settlement agreement provides that petitioner's right to maintenance would terminate upon her filing of a petition to modify support. However, where a marital settlement agreement contains an unallocated combination of child support and taxable maintenance, that payment is subject to the statutory right of modification contained in the Marriage Act even if the agreement contains a nonmodification clause. *Semonchik*, 315 Ill. App. 3d at 403. Because the parties in this case chose to "lump maintenance in with child support, creating an 'unallocated' support payment, that 'unallocated' support payment is, by statute, modifiable." *Semonchik*, 315 Ill. App. 3d at 403.

■ We next address respondent's argument that the trial court improperly raised the issues of fraud and estoppel *sua sponte*. The record reveals that petitioner's counsel raised these issues in his opening statement during the hearing on the petition to modify support. The trial court did not raise the issues *sua sponte* as respondent suggests.

Respondent nevertheless contends that section 2—613(d) of the Code of Civil Procedure (Code) (735 ILCS 5/2—613(d) (West 2000)) required petitioner to allege fraud and estoppel in a pleading before arguing the issues at the hearing. We disagree. Section 2—613(d) of the Code provides that the facts constituting any affirmative defense, such as fraud or estoppel, "and any ground or defense, whether affirmative or not, which if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." 735 ILCS 5/2—613(d) (West 2000).

The Civil Practice Law, Article II of the Code (735 ILCS 5/2—101 *et seq.* (West 2000)), including section 2—613(d), governs proceedings under the Marriage Act unless the Marriage Act provides otherwise. 750 ILCS 5/105(a) (West 2000). However, we conclude that section 2—613(d) did not require petitioner to set forth her defense in a responsive pleading because respondent's petition already described his prior nondisclosure of income. Respondent was not prejudiced when petitioner's counsel first raised the issues of fraud and estoppel at the hearing because petitioner's defense to the petition to modify did not "take the opposite party by surprise." 735 ILCS 5/2—613(d) (West 2000); *Avery v. Sabbia*, 301 Ill. App. 3d 839, 848 (1998).

■ Respondent next contends that the parol evidence rule precluded the trial court from admitting evidence of the parties' settlement negotiations, including the February 2, 2000, letter in which

respondent's counsel stated that respondent expected to earn only $80,000 in the year 2000. However, it is well settled that parol evidence is admissible in a marriage case to establish the existence of fraud and the true intent and understanding of the parties. *In re Marriage of Johnson*, 237 Ill. App. 3d 381, 391 (1992). Therefore, the parol evidence rule did not preclude the trial court from admitting evidence of respondent's representations before the settlement.

■ Although he states his final argument several ways, respondent essentially contends that the trial court's denial of his motion to reduce support was impractical, unfair, and an abuse of discretion. We disagree. The modification of a support award will be made only on proof of a substantial change in circumstances pursuant to section 510(a) of the Marriage Act. 750 ILCS 5/510(a) (West 2000). Contrary to respondent's assertion, the party seeking the modification bears the burden of proving this change. *In re Marriage of Connors*, 303 Ill. App. 3d 219, 224 (1999).

The court must determine the threshold issue of whether a substantial change in circumstances has occurred before determining the amount of the increase or decrease in child support. *In re Marriage of Hughes*, 322 Ill. App. 3d 815, 818 (2001). A trial court's determination that there has been a substantial change in circumstances to warrant the modification lies within its discretion and will not be disturbed absent an abuse of discretion. *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 149 (1996). A trial court abuses its discretion when no reasonable person would agree with the decision. *In re Marriage of Mitteer*, 241 Ill. App. 3d 217, 224 (1993).

■ ■ Orders entered in the context of a dissolution of marriage case may be vacated or modified if procured through fraud, and a consent decree may be modified where its execution has been obtained through misrepresentation. To prove fraudulent misrepresentation, a party must show (1) a false statement of a material fact; (2) the party making the statement knew or believed it to be untrue; (3) the recipient of the statement had a right to rely on it and did so; (4) the statement was made for the purpose of inducing the recipient to act; and (5) injury from the recipient's reliance on the statement. *In re Marriage of Ealy*, 269 Ill. App. 3d 971, 973 (1995). The related defense of equitable estoppel is available in a marriage dissolution case where a person's statement or conduct induces another to reasonably rely on the statement or conduct to his or her detriment. *In re Marriage of Duerr*, 250 Ill. App. 3d 232, 235 (1993).

In *In re Marriage of Gurin*, 212 Ill. App. 3d 806 (1991), the parties negotiated a marital settlement agreement. During the negotiations and at a hearing, the respondent asserted that he was then unemployed

but would nevertheless pay $75 per week in child support. The petitioner then agreed to convey the marital residence to respondent. However, the respondent obtained employment before the agreement was signed and incorporated into the judgment of dissolution. The petitioner subsequently filed a motion to modify child support and the property distribution, alleging that the respondent's fraudulent concealment of his prospects for impending employment induced her to enter into the parties' marital settlement agreement. *Gurin*, 212 Ill. App. 3d at 809. The trial court granted the motion and set aside the judgment.

The appellate court affirmed the decision that the respondent's nondisclosure was fraudulent. The court held that "based upon the circumstances of this case, [the respondent] had an affirmative duty to disclose all information regarding his increase in income and change of employment status to [the petitioner] prior to signing and the court's entry of the judgment. As previously discussed, failure to disclose material information under certain circumstances in which a duty to speak exists, as here, amounts to fraud." *Gurin*, 212 Ill. App. 3d at 815.

■ Here, respondent also had an affirmative duty to disclose his change in employment status before the court entered the dissolution judgment. See *Gurin*, 212 Ill. App. 3d at 815. Respondent stated that he earned only $80,000 from one job, and his conscious nondisclosure of his additional income amounted to a false statement of material fact upon which petitioner reasonably relied to her detriment. The additional information would have certainly affected the settlement negotiations. We agree with the trial court that respondent may not secretly reap a disproportionate share of the economic benefit of his second job and later demand petitioner to shoulder a greater share of the cost when he loses that employment. The court did not abuse its discretion in denying respondent's motion to modify support.

This case is distinguishable from *In re Marriage of Broday*, 256 Ill. App. 3d 699 (1993). In that case, the husband initiated divorce proceedings and retained an attorney who was a friend of both parties and had represented them in the past. The husband and his attorney each advised the wife to retain counsel, but she declined. The parties met with the husband's attorney and negotiated a separation agreement. At the prove-up hearing, the wife ignored the court's repeated admonishments to hire an attorney and insisted that she understood the agreement. The trial court then incorporated the signed agreement into the dissolution judgment. *Broday*, 256 Ill. App. 3d at 701-02.

The wife subsequently discovered that the agreement did not fully

disclose all of the husband's assets even though it purported to do so. *Broday*, 256 Ill. App. 3d at 702. The husband's attorney did not learn of the nondisclosure until after the agreement was signed. *Broday*, 256 Ill. App. 3d at 703. The wife petitioned to modify or vacate the judgment and alleged, among other things, that the separation agreement was procured by fraud. Even though the trial court concluded that the husband lacked the "genuine intent" to deceive, the court granted the petition. *Broday*, 256 Ill. App. 3d at 703. The appellate court reversed because the element of *scienter* was missing. *Broday*, 256 Ill. App. 3d at 704. The appellate court further noted that "the fact that [the wife] could have discovered information about [her husband's] financial status through her own investigation or by hiring an attorney diminishes her claim of detrimental reliance on [his] misrepresentations." *Broday*, 256 Ill. App. 3d at 704.

Here, however, the trial court found that respondent intended to deceive petitioner when he concealed his additional income, and we defer to the trial court's credibility determination on that issue. Also, in *Broday*, the wife's limited knowledge of her husband's financial status was the result of her failure to retain counsel. The parties in this case agree that they waived formal discovery to expedite the litigation. However, petitioner's waiver was induced, at least in part, by respondent's assertion that his annual salary was only $80,000.

Respondent contends that he was unfairly punished for the nondisclosure because the trial court and the attorneys should have asked for proof of his income at the dissolution proceeding. In attempting to shift the blame for his concealment, respondent argues that his nondisclosure was less culpable than the affirmative misrepresentation in *Gurin*. We disagree.

The record indicates that the trial court and the attorneys had no reason to inquire about respondent's income at the dissolution proceeding because respondent expressly testified that he had "made a full disclosure of all the assets [he] acquired during the marriage." However, if respondent had undertaken even the most basic disclosure, petitioner would have known of his employment by OneBlueWorld.com, and this information would have affected her decision to acquiesce in the settlement. Furthermore, respondent's affirmation at the prove-up hearing essentially negated the settlement agreement provision in which each party waived his or her right to formal discovery of the other party's assets. Nevertheless, the provision waiving discovery did not authorize respondent to perpetrate a fraud on petitioner and the trial court, as the trial court found.

At trial, respondent argued that his discovery of additional tax liability for the year 1999 contributed to the substantial change in

circumstances warranting a reduction of his support obligation. He abandons this argument on appeal, and, in any event, such an argument lacks merit because the settlement agreement expressly provides that respondent assumed responsibility for the parties' entire marital tax liability accruing during the year 1999. Finally, we note that, although respondent asserts that he paid petitioner a "substantial amount of money," he does not challenge the trial court's calculation of his support arrearage.

For the preceding reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HUTCHINSON, P.J., and GROMETER, J., concur.