(2-24) 
 No. 3--02--0946

_________________________________________________________________

 IN THE 

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2004

In re
 MARRIAGE OF              )  Appeal from the Circuit Court

                               )  of the 14th Judicial Circuit, 

CAROL J. ADAMS,                )  Whiteside County, Illinois,

n/k/a CAROL J. CLARY,          ) 

                               )

Petitioner-Appellee,      )  No. 99--D--113 

      ) 

     and                       ) 

           ) 

STEVEN L. ADAMS,               )  Honorable

                               )  Dan A. Dunagan,

     Respondent-Appellant.     )  Judge, Presiding. 

________________________________________________________________

JUSTICE BARRY delivered the opinion of the court:

________________________________________________________________ 

The petitioner, Carol J. Clary, filed a petition seeking an increase in the child support paid to her by the respondent, Steven L. Adams.  The trial court granted Carol’s petition, and also awarded her attorney fees in the amount of $250.  On appeal, Steven contends that (1) the trial court abused its discretion in modifying his child support obligation, and (2) the court erred in awarding attorney fees to Carol.  We vacate the award of attorney fees, but otherwise affirm the judgment of the trial court.

FACTS

The parties were divorced in 1999.  Carol was awarded physical custody of their son, Kevin.  Steven was required to pay child support in the amount of the dependency allowance he received from the United States Army.  At the time of the dissolution, Steven’s dependency allowance was $200 per month.  

On July 12, 2001, Carol filed a petition to modify child support.  In her petition, Carol claimed that Steven was no longer employed by the United States Army, and he had experienced a substantial increase in income since his discharge from active duty.  Carol asserted that the current child support amount was not sufficient due to increases in the cost of living and the increased age of the child.  Carol also sought attorney fees she incurred in pursuing the modification of child support.

On March 13, 2002, Carol’s attorney, James Mertes, filed a notice of hearing for March 18, 2002, at 9 a.m.  Steven’s attorney, Ronald Stradt, filed and served a motion for extension of time.  Stradt asserted that he received the notice of hearing on Friday, March 15, and that he was unable to attend the hearing on March 18 due to scheduling conflicts.  The motion for extension of time was sent to Mertes by mail and by facsimile on March 15.  Stradt also attempted to contact Mertes by telephone on March 15.  Mertes was not in his office, so Stradt left a message indicating that he could not be present for the hearing on March 18.  Nonetheless, Mertes proceeded with the hearing and sought a default judgment.  Although Stradt's motion for extension of time made it to the circuit clerk's office on March 18, it obviously did not make its way to the court file before the hearing.  The trial court, unaware of the motion for extension of time, entered an order granting an increase in child support.  Stradt subsequently filed a motion to vacate the order, and the order was vacated after a hearing. 

Steven then filed a financial disclosure statement in which he reported net monthly income of $3,079.78 as of March 27, 2002.  He disclosed $2,365.01 in monthly living expenses, including his $200 per month child support payment.  On May 15, 2002, Steven filed a notice stating that he had voluntarily terminated his employment to pursue "enhanced career opportunities in Germany."  

Carol reported $200 per month in income from child support payments, and $2,642.37 in monthly living expenses in her financial disclosure statement.  She also listed a savings account with a balance of $74,000.

A hearing on the petition was held on July 22, 2002.  Steven testified that he moved to Germany in June of 2002, but he had not yet found employment.  Prior to moving to Germany, Steven was employed as a television news helicopter pilot in Washington D.C., earning $55,000 per year.  Steven testified that he moved because he believed he would have enhanced career opportunities in Germany, and his girlfriend lived there.

Mertes filed an affidavit of attorney fees, asserting that he had spent 7.3 hours on this matter and his customary charge for these services was $150 per hour.  Therefore, his fees were $1,095.

The trial court found that a substantial change in circumstances had occurred in that both the needs of the child and Steven’s income had increased since the entry of the judgment of dissolution.  Therefore, the court modified Steven’s child support obligation to $287.03 every two weeks.  The court also awarded Carol $250 in attorney fees.

DISCUSSION

On appeal, Steven contends that the trial court erred in granting an increase in his child support obligation because no evidence was offered to show that the child’s needs had changed or that he had experienced an increased ability to pay child support. 

A child support order may be modified upon a showing of a substantial change in circumstances.  750 ILCS 5/510(a) (West 2000).  To establish a substantial change in circumstances, the petitioner must show an increase in the noncustodial parent’s ability to pay and an increase in the needs of the child since the court's previous order.  
In re Marriage of Schmerold
, 88 Ill. App. 3d 348, 410 N.E.2d 629 (1980).  Courts may presume that the needs of children increase as they grow older and as the cost of living rises.  
In re Marriage of Pylawka
, 277 Ill. App. 3d 728, 661 N.E.2d 505 (1996).  A trial court's decision concerning modification of child support will not be disturbed absent an abuse of discretion.  
In re Marriage of Sassano
, 337 Ill. App. 3d 186, 785 N.E.2d 1058 (2003).

In this case, the initial child support obligation was established in 1999.  The modification was granted in 2002.  Given this passage of time, we presume that the child’s needs have increased as he has grown older and the cost of living has risen.

With regard to his ability to pay child support, Steven admits in his brief that his income has increased.  Nonetheless, he argues that his ability to pay child support has not increased because the cost of living in Washington D.C. is higher than the cost of living at his previous residence in the Quad Cities.

Initially, we note that the trial court set Steven’s child support obligation in accordance with the statutory guidelines when it granted the modification.  See 750 ILCS 5/505(a)(1) (West 2000).  The statutory guidelines create a rebuttable presumption that the specified percentage of the supporting parent's income represents an appropriate child support award.  
In re Marriage of Freesen
, 275 Ill. App. 3d 97, 655 N.E.2d 1144 (1995).  The guidelines apply regardless of whether the obligor lives in a high cost area typical of large cities, or in an area with a lower cost of living.  Because the obligor’s cost of living is not considered in setting child support, we find that the trial court properly declined to consider Steven’s cost of living in determining whether he had experienced an increased ability to pay.  

Additionally, Steven’s financial disclosure statement indicates that he had the ability to pay the increased child support amount as his monthly income exceeded his expenses by more than $700.  Moreover, an increase in child support from the previous obligation of $200 per month is clearly justified based on Steven’s income of $55,000 per year.  Based on this record, we conclude that the trial court did not abuse its discretion in determining that there was a substantial change of circumstances justifying an increase in the child support obligation.     

Steven also contends that the trial court abused its discretion in setting child support based on his income from his prior employment.  Steven claims that the court did not have authority to set child support based on his prior income while he was unemployed.

It is well established that courts have the authority to compel parties to pay child support at a level commensurate with their earning potential.  
In re Marriage of Sweet
, 316 Ill. App. 3d 101, 735 N.E.2d 1037 (2000).  A court may impute additional income to a noncustodial parent who is voluntarily underemployed.  
Sweet
, 316 Ill. App. 3d 101, 735 N.E.2d 1037
.    

In this case, Steven voluntarily terminated his employment in Washington D.C. because he had better career prospects in Germany. As shown by his testimony, Steven was confident that he would make more money in Germany.  Therefore, it appears that he received a benefit from setting child support based on his prior income, which was lower than his expected future income.  In any event, we find that the trial court did not exceed its authority in setting child support based on Steven’s prior income because he was voluntarily unemployed and his prior income reflected his earning potential.

Steven also asserts that the court erred in awarding Carol attorney fees because she did not demonstrate that she was financially unable to pay.

The primary obligation for payment of attorney fees rests upon the party for whom the services are rendered.  
In re Marriage of Mantei
, 222 Ill. App. 3d 933, 583 N.E.2d 1192 (1991).  However, the court may order one spouse to pay some or all of the attorney fees incurred by the other.  750 ILCS 5/508 (West 2000).  In order to justify an award of attorney fees, the party seeking the award must demonstrate both financial inability to pay the fees and the ability of the other spouse to do so.  
In re Marriage of Cotton
, 103 Ill. 2d 346, 469 N.E.2d 1077 (1984).  

In this case, Carol’s financial disclosure statement indicates that she had a savings account with a balance of $74,000, as well as other financial assets.  We conclude that the trial court erred in awarding Carol attorney fees because the record shows that she had the ability to pay her own attorney fees upon seeking the default judgment.  

CONCLUSION

For the foregoing reasons, we vacate the award of attorney fees to Carol, but otherwise affirm the judgment of the Whiteside County circuit court.  

Affirmed in part and vacated in part.

LYTTON, J. concurring with SCHMIDT, J. specially concurring.

JUSTICE SCHMIDT, specially concurring:

I concur, but write separately because I feel compelled to comment on the circumstances of the default judgment that was entered in this case.  Steve's attorney, Ronald Stradt, has his offices in Springfield, Illinois, a considerable distance from Whiteside County.  Carol's attorney filed notice of the March 18 hearing on March 13, three working days before the hearing date.  Stradt, apparently a busy trial attorney, was unaware of the notice of hearing until March 15, the Friday before the hearing. It seems clear from the record that Carol's attorney did not consult with Stradt before scheduling the hearing.  Carol's attorney could have prevented the waste of resources that occurred as a result of the entry of the default judgment by setting a mutually agreeable date for the hearing, or by agreeing to a continuance after receiving the motion for extension of time and telephone message from Stradt.  Instead, he proceeded with the hearing and sought and secured a default judgment.  Once the trial court became aware that Stradt had, before the March 18 hearing, filed a motion seeking to continue the hearing, it appropriately vacated the default judgment.  

In the interest of promoting civility in the legal profession, I note that a simple professional courtesy would have avoided the needless litigation related to the entry of the default judgment in this case.  

Certainly, Carol's attorney did not violate any rules of court in setting the motion for hearing as he did.  Maybe that is part of the bigger problem.  The Fifth Judicial Circuit has a wonderful local rule which prevents the type of conduct of which I complain here.  The rule states as follows:

     "Coordination of Hearing Date.  It is the

responsibility of counsel preparing the notice

of hearing to make a good faith effort to

coordinate with the court and all opposing

counsel to set the hearing at a time that is

mutually convenient.  The filing of the notice

of hearing shall constitute a certification of

compliance with this rule."  5
th Judicial Cir.

Ct. R. IV(A)(6) (eff. November 3, 1997). 

The Tenth Judicial Circuit of Illinois has a similar rule that also applies to notices of depositions.  10th Judicial Cir. Ct. R. 3.5 (adopted March 17, 2003).  However, even in the absence of such a formal rule, exercising the courtesy required by that rule would not only avoid needless waste of resources and promote a more collegial relationship between opposing counsel, but it would undoubtedly also reduce the amount of antacids and blood pressure medication consumed by trial lawyers.