# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*In re Marriage of Doermer*, 2011 IL App (1st) 101567

| | |
|---|---|
| Appellate Court Caption | *In Re* THE MARRIAGE OF RICHARD D. DOERMER, Petitioner-Appellee, and KATHLEEN DOERMER, Respondent-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-1567 |
| Filed | August 16, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly granted petitioner's motion to dismiss respondent's petition for an extension of petitioner's maintenance obligation under the parties' marital settlement agreement, which required petitioner to pay unallocated maintenance and child support and included a nonmodification clause. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 96-D-13262; the Hon. LaQuietta Hardy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Rosenfeld, Hafron, Shapiro & Farmer, of Chicago (Howard H. Rosenfeld, Maxine Weiss Kunz, and Matt Volk, of counsel), for appellant.

LeVine, Wittenberg, Shugan & Schatz, Ltd., of Tinley Park (Michael Schatz, of counsel), for appellee.

Panel

PRESIDING JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Justices Karnezis and Connors concurred in the judgment and opinion.

## OPINION

¶ 1    On September 25, 2009, the circuit court of Cook County entered an order denying a motion under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2008)) to dismiss (motion to dismiss), which was filed by the petitioner, Richard Doermer (Richard), in opposition to a "petition for extension of maintenance" filed by his ex-wife and respondent, Kathleen Doermer (Kathleen). On October 20, 2009, Richard filed a motion to reconsider the circuit court's September 25, 2009 order. On April 27, 2010, the circuit court granted Richard's motion to reconsider and granted Richard's motion to dismiss, thereby dismissing Kathleen's "petition for extension of maintenance." On appeal, Kathleen argues that the circuit court relied on erroneous case law in granting Richard's motion to dismiss. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                              BACKGROUND

¶ 3    On October 14, 1989, Richard and Kathleen were married. On July 16, 1991, their child, Caitlin Doermer (Caitlin), was born. On September 11, 1996, Richard filed a "petition for dissolution of marriage," requesting that the marriage union be dissolved and that issues relating to child custody and marital property be determined.

¶ 4    On January 22, 1999, the circuit court entered a judgment for dissolution of marriage, which dissolved the couple's marriage. The judgment for dissolution of marriage incorporated the parties' marital settlement agreement, which disposed of all property and support disputes, and also incorporated the parties' joint parenting agreement, which awarded Kathleen "residential custody" of Caitlin and awarded "liberal visitation" to Richard. Pursuant to article III, paragraph 1, of the marital settlement agreement, beginning on February 1, 1999, Richard was required to pay "unallocated maintenance and child support" to Kathleen in the amount of $5,785 per month. Article III, paragraph 2, of the marital settlement contained the following nonmodification clause:

    "RICHARD's obligation to pay and KATHLEEN's right to receive maintenance shall terminate upon the first to occur of the following events: a) payment of unallocated maintenance and child support for eighty-four (84) consecutive months

(seven consecutive years) following entry of a Judgment for Dissolution of Marriage; b) the death of KATHLEEN; c) the remarriage of KATHLEEN; or d) [t]he cohabitation of KATHLEEN with another adult person on a residential conjugal basis. Thereafter, KATHLEEN shall be forever barred from receiving maintenance and thereafter KATHLEEN shall have the right to receive child support only until such time as CAITLIN attains an 'emancipation event' as hereinafter stated."

¶ 5    In April 2005, Richard and Kathleen agreed to modify portions of their marital settlement agreement, which was incorporated into the January 22, 1999 judgment for dissolution of marriage. On April 27, 2005, the circuit court entered an agreed order reflecting those modifications:

"1. Effective this date, Article III, paragraph 1 of the Judgment for Dissolution of Marriage entered on January 22, 1999 is amended as follows:

A. [Richard] shall continue to pay unallocated maintenance and child support to [Kathleen] until January 31, 2006 in the sum of $5860.00 per month; and

B. Thereafter, commencing February 1, 2006 and through July 16, 2009, the sum of $5000.00 per month payable in two equal installments on the 1st and 15th of each month as unallocated maintenance and support.

2. Article III, paragraph 2 shall remain in force and effect except the provision for the amount and length of payment amended as provided in paragraphs A and B above.

3. The parties acknowledge the fact that the minor child of the parties, to wit, Caitlin Doermer, will be attending a private facility, known as Culver Academy, and as such, will not be spending all of her time in the residence of [Kathleen]. [Kathleen] shall have no obligation to pay any costs associated with Culver Academy.

4. This Order is entered predicated upon that information.

5. All other provisions of the Marital Settlement Agreement shall remain in full force and effect."

¶ 6    On June 22, 2009, Kathleen filed a "petition for extension of maintenance" (petition to modify), pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510 (West 2008)), requesting that the duration of her support award be extended because an alleged substantial change in her circumstances affected her "ability to support herself and [Caitlin's] minority status."

¶ 7    On July 16, 2009, Caitlin reached the age of majority and became emancipated from Richard and Kathleen.

¶ 8    On July 23, 2009, Richard filed a motion to dismiss Kathleen's petition to modify, asserting that Kathleen's petition to modify was legally insufficient as a matter of law and that "affirmative matter"–namely, the fact that Caitlin had reached the age of majority and child support was no longer required to be paid–defeated the claim brought by Kathleen.

¶ 9    On September 25, 2009, a hearing on Richard's motion to dismiss was held. Following the parties' arguments, the circuit court denied the motion to dismiss, stating in pertinent part

the following:

> "[N]either one of you [has] a case on point that tells me exactly what I have to do. I understand that unallocated support, which is maintenance and child support, that is what they agreed to, an unallocated support order. You can't show me anything that says you can modify support. You say that the child support is always modifiable–but you have nothing to say that you cannot modify maintenance–and that's what my problem is because this is a motion to strike and dismiss. In other words, don't even let them bring their petition, and I am not inclined to grant your motion to dismiss on this matter."

¶ 10     On October 20, 2009, Richard, pursuant to leave of the circuit court, filed a motion to reconsider the court's September 25, 2009 order denying his motion to dismiss. The motion to reconsider argued, *inter alia*, that the parties' marital settlement agreement deprived the circuit court of the authority to grant an extension of maintenance after Caitlin's emancipation and cited an October 8, 2009 Illinois Supreme Court decision (*Blum v. Koster*, 235 Ill. 2d 21, 919 N.E.2d 333 (2009)) for support.

¶ 11     On December 29, 2009, a hearing was held on the motion to reconsider. At the conclusion of the hearing, the circuit court granted the motion to reconsider in part, but certified the following question on appeal before this court, pursuant to Illinois Supreme Court Rule 308(a) (eff. Feb. 1, 1994):

> "Whether a petition for an extension of maintenance should be dismissed when the parties had previously agreed to a date that the maintenance would terminate, the maintenance was received in the form of unallocated support, and the child for whom the unallocated support was being received is emancipated."

¶ 12     On January 28, 2010, this court denied Richard's petition for leave to appeal and declined to answer the circuit court's certified question. Thus, the matter returned to the circuit court for a final decision.

¶ 13     On April 16, 2010, a final hearing was held on the motion to reconsider during which the circuit court heard arguments by both parties. On April 27, 2010, the circuit court, relying on *Blum*, 235 Ill. 2d 21, 919 N.E.2d 333, entered an order granting Richard's motion to reconsider and granting the motion to dismiss Kathleen's petition to modify.

¶ 14     On May 26, 2010, Kathleen filed a notice of appeal before this court.

¶ 15                                    ANALYSIS

¶ 16     The sole issue on appeal before this court is whether the circuit court erred in granting Richard's motion to dismiss, which we review *de novo*. See *In re Marriage of Wittland*, 361 Ill. App. 3d 785, 787, 838 N.E.2d 308, 309 (2005).

¶ 17     Kathleen argues that the circuit court erred in granting Richard's motion to dismiss because it erroneously found that the nonmodification clause set forth in the parties' marital settlement agreement was enforceable. Specifically, Kathleen contends that unallocated maintenance and child support is always modifiable, regardless of whether a nonmodification exists in the marital settlement agreement, that the circuit court erred in relying on *Blum* in

reaching its decision, and that the circuit court should have instead applied the standard set forth in *In re Marriage of Semonchik*, 315 Ill. App. 3d 395, 733 N.E.2d 811 (2000), and its progeny.

¶ 18    Richard counters[1] that the circuit court properly found that the nonmodification clause in the parties' marital settlement agreement was enforceable. He maintains that *Semonchik* was inapplicable to the case at bar and that the circuit court appropriately relied on *Blum* in rendering its decision.

¶ 19    Generally, modification and termination of maintenance and support obligation are governed by sections 502, 504(a) and 510(a-5) of the Act. 750 ILCS 5/502, 504(a), 510(a-5) (West 2008); *Blum*, 235 Ill. 2d at 29, 919 N.E.2d at 338.

¶ 20    Section 502 of the Act states in relevant part:

"(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral agreement containing provisions for *** maintenance ***.

(b) The terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable.

* * *

(f) Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment."

¶ 21    Section 504(a) of the Act states that the court "may grant a temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just ***, in gross or for fixed or indefinite periods of time." 750 ILCS 5/504(a) (West 2008). Section 504(a) further provides that in granting maintenance awards, the circuit court must consider 12 relevant facts, such as the income and property of each party, the needs of each party, the present and future earning capacity of each party, and the standard of living established during the marriage. 750 ILCS 5/504(a)(1) through (a)(12) (West 2008).

¶ 22    Section 510(a-5) of the Act provides that "[a]n order of maintenance may be modified or terminated only upon a showing of a substantial change in circumstances. In all such proceedings, as well as in proceedings in which maintenance is being reviewed, the court shall consider the applicable factors set forth in subsection (a) of Section 504 ***" (750 ILCS 5/510 a-5) (West 2008)) as well as other factors such as the change in employment status of either party, the efforts made by the party receiving maintenance to become self-

---

[1]Richard accepts the statement of facts as presented in Kathleen's opening brief before this court because he does not include a statement of facts in his response brief. See Illinois Supreme Court Rule 341(i) (eff. Sept. 1, 2006).

supporting, and any impairment to the earning capacity of either party.

¶ 23    Kathleen argues that section 510 of the Act and the holding in *Semonchik* clearly provided her with the procedural right to seek a modification of her unallocated maintenance and child support award, despite the nonmodification clause contained in the parties' marital settlement agreement. The existence of the nonmodification clause in the marital settlement agreement, she maintains, is thus rendered unenforceable.

¶ 24    In *Semonchik*, the parties were married in 1980 and divorced in 1995. *Semonchik*, 315 Ill. App. 3d at 396-97, 733 N.E.2d at 813. The parties had two children, who were both born in January 1985. *Id.* at 397, 733 N.E.2d at 813. The judgment for dissolution of marriage incorporated the terms of a marital settlement agreement pursuant to which James Semonchik (James), the husband, was to pay his ex-wife, Roxanne Semonchik (Roxanne), "$3,500 per month for *unallocated child support and maintenance*," until October 1, 1998. (Emphasis added.) *Id.* at 397, 733 N.E.2d at 813. In May 1997, when the children were 12 years old, James filed a motion to modify support. *Id.* at 397, 733 N.E.2d at 813. Subsequently, the trial court found that James's unemployment status was a "substantial change in circumstances warranting the modification of support obligation," and abated James's support obligation to the filing date of James's motion to modify support. *Id.* at 398, 733 N.E.2d at 814. In May 1998, Roxanne filed a petition to reestablish maintenance and child support, alleging that James had become employed. Subsequently, the trial court granted Roxanne's petition and ordered James to pay $2,275 per month of unallocated family support until January 2000. *Id.* at 398-99, 733 N.E.2d at 814. On appeal, James argued that the trial court lacked discretion to extend his support obligation beyond the time period clearly and unambiguously agreed upon by the parties–October 1, 1998. *Id.* at 402-03, 733 N.E.2d at 817. The reviewing court disagreed, holding that "where a marital settlement agreement contains an unallocated combination of child support and taxable maintenance payment, that payment is subject to the statutory right to modification contained in the *** Act." *Id.* at 403, 733 N.E.2d at 817. Thus, regardless of the terms in the marital settlement agreement stating that the maintenance terms were nonmodifiable, "where the parties choose to lump maintenance in with child support, creating an 'unallocated' support payment, that 'unallocated' support payment is, by statute, modifiable." *Id.* at 403, 733 N.E.2d at 817; accord *In re Marriage of Sassano*, 337 Ill. App. 3d 186, 193, 785 N.E.2d 1058, 1064 (2003).

¶ 25    In this case, the circuit court, in granting Richard's motion to reconsider and motion to dismiss, relied on *Blum* for support. In *Blum*, the parties entered into a marital settlement agreement, which provided that the husband, Steven Blum (Steven), would pay his ex-wife, Judy Koster (Judy), *unallocated maintenance and support*, " 'for her and the minor children, commencing April 1, 2000, *** ($5000.00) per month for a total of *** (61) consecutive months. Judy's right to receive maintenance and Steven's obligation to pay maintenance after April 30, 2005 is *reviewable*.' " (Emphasis added.) *Blum*, 235 Ill. 2d at 33, 919 N.E.2d at 341. In January 2005, Steven filed a petition to terminate Judy's maintenance after April 30, 2005, arguing that the children had attained the age of majority and that he was paying for their college expenses. *Id.* at 26, 919 N.E.2d at 336. Following a trial, the trial court entered an order reducing Judy's monthly maintenance to $3,500 beginning May 1, 2005, and limiting maintenance to three years. *Id.* at 27, 919 N.E.2d at 337. The appellate court

reversed, finding, *inter alia*, that the trial court's reduction of Judy's maintenance was not supported by the evidence and that the trial court "exceeded its statutory authority in making its award of maintenance nonmodifiable." *Id.* at 28, 919 N.E.2d at 338. On appeal, our supreme court reiterated the principle that "factors set forth in section 510(a-5) are inapplicable when the parties have otherwise agreed on the terms of modification and termination of maintenance in a written marital settlement agreement approved by the court, pursuant to section 502." *Id.* at 32, 919 N.E.2d at 340. However, our supreme court noted that the parties' marital settlement agreement expressly stated that Steven's maintenance obligation was "reviewable" after the 61-month period. *Id.* at 35, 919 N.E.2d at 342. Further, the *Blum* court found that the marital settlement agreement "did not provide for consideration of any terms other than the statutory factors generally applicable to the trial court's review and modification of maintenance," and reversed the appellate court by concluding that the trial court properly considered the enumerated statutory factors under sections 504(a) and 510(a-5) of the Act and that "the record support[ed] its decision to continue Judy's award of maintenance at a reduced amount." *Id.* at 34-36, 38, 919 N.E.2d at 341-42, 344. Our supreme court further noted that although the parties' initial award was unallocated maintenance and support, the children were emancipated by the end of the 61-month period. *Id.* at 35, 919 N.E.2d at 342. The *Blum* court then held that because only maintenance was at issue by the end of the 61-month period, "the terms of the marital settlement agreement [were] binding on the parties and the court." See *id.* at 32, 919 N.E.2d at 340; 750 ILCS 5/502(b) (West 2008).

¶ 26    In the instant case, Richard and Kathleen initially entered into a marital settlement agreement for unallocated maintenance and support, beginning on February 1, 1999, for a period of 84 consecutive months. In April 2005, when Caitlin was 14 years old, Richard and Kathleen mutually agreed to modify portions of their marital settlement agreement, by requiring Richard to pay unallocated maintenance and child support to Kathleen at a reduced amount but for an extended time from February 1, 2006 until July 16, 2009–namely, Caitlin's eighteenth birthday and emancipation from Richard and Kathleen. Thus, like the parties in *Blum* and *Semonchik*, Richard's and Kathleen's marital settlement agreement provided a definite end date by which Richard was obligated to pay Kathleen. On June 22, 2009, just 24 days prior to Caitlin's eighteenth birthday, Kathleen filed a petition to modify, requesting that the duration of her support award be extended beyond July 16, 2009 because an alleged substantial change in her circumstances affected her "ability to support herself and [Caitlin's] minority status." The substance of Kathleen's petition to modify focused on medical and financial reasons which allegedly prevented Kathleen from supporting herself, and the period of time for which she requested to prolong the support award extended beyond the date of Caitlin's emancipation from Richard and Kathleen. Thus, we find that these facts are more like those in *Blum* than in *Semonchik*, and that Kathleen's petition to modify was essentially a request to extend maintenance because child support was no longer at issue after Caitlin's July 16, 2009 emancipation from her parents. Further, we note that it is irrelevant in this case that Kathleen *filed* her petition to modify 24 days prior to Caitlin's eighteenth birthday, because the period of time for which she requested to prolong the support award extended well past Caitlin's emancipation. Therefore, because only maintenance was at issue beyond

July 16, 2009, we find that the terms of the marital settlement agreement governed and Kathleen was not entitled to an automatic statutory right to modify the support award.

¶ 27　　"A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement." *Id.* at 33, 919 N.E.2d at 340. "The interpretation of a marital settlement agreement is reviewed *de novo* \*\*\*." *Id.*, 919 N.E.2d at 340. When the terms of the marital settlement agreement are unambiguous, a reviewing court determines the parties' intent solely from the plain language of the agreement. *In re Marriage of Culp*, 399 Ill. App. 3d 542, 547, 936 N.E.2d 1040, 1045 (2010). "An agreement is unambiguous when it contains language susceptible to only one reasonable interpretation." *Id.*, 936 N.E.2d at 1045. However, "[l]anguage is not ambiguous merely because the parties do not agree on its meaning." *Id.*, 936 N.E.2d at 1045.

¶ 28　　Here, on April 27, 2005, the circuit court entered an agreed order reflecting the parties' modification of their marital settlement agreement, which altered the amount of the support award and extended the length of payment to July 16, 2009. The agreed order expressly stated that the marital settlement agreement's nonmodification clause under "Article III, paragraph 2 shall remain in force and effect," except for the amended amount and length of payment as provided in the agreed order. Further, the agreed order expressly stated that [a]ll other provisions of the Marital Settlement Agreement shall remain in full force and effect." Based on the plain language of the marital settlement agreement, we find that it was the parties' intent for Richard to make unallocated maintenance and child support payments to Kathleen until July 16, 2009, when Caitlin turned 18 years old and became emancipated. We further find that the parties, by contractual agreement, intended for Kathleen's maintenance support from Richard to terminate on July 16, 2009. While Kathleen's personal circumstances are unfortunate, under *Blum* and the terms of the marital settlement agreement, the circuit court was unable to grant the relief requested. See 750 ILCS 5/502(b) (West 2008). Thus, Kathleen was not entitled to a modification of the marital settlement agreement to extend support payments made to her by Richard. Therefore, we hold that the circuit court properly granted Richard's motion to reconsider and motion to dismiss Kathleen's petition to modify.

¶ 29　　For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30　　Affirmed.