2022 IL App (2d) 200160
No. 2-20-0160
Opinion filed January 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF ROCKNE L. BRUBAKER, | ) ) ) | Appeal from the Circuit Court of Kane County. |
|     Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 11-D-1408 |
| MONICA L. BRUBAKER, | ) ) ) | Honorable René Cruz, |
|     Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner, Rockne L. Brubaker, appeals from the circuit court of Kane County's grant of summary judgment in favor of respondent, his former wife, Monica L. Brubaker, on his petition filed under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)) to vacate the judgment of dissolution of marriage, based on respondent's alleged fraudulent concealment of her ownership of a condominium unit along the Chicago lakefront worth over $800,000 (the condo). The circuit court ruled that, because the parties waived formal discovery in the original dissolution proceedings, and because petitioner could have discovered the condo had he conducted such discovery, the waiver of formal discovery reflected a lack of due diligence in the original action as a matter of law. We reverse and remand the cause.

¶ 2                                              I. BACKGROUND

¶ 3     Over the course of the parties' 30-year marriage, they raised four children, lived in Algonquin, and acquired a second home in Galena. They pursued separate careers: petitioner as an ear, nose, and throat physician; respondent as co-owner of a company called New Life Printing & Services (New Life). Irreconcilable differences eventually caused their marriage to break down, and, on October 4, 2011, petitioner filed a petition for dissolution of marriage. During the dissolution proceedings, the parties engaged in motion practice and exchanged written requests for discovery. On September 4, 2012, the court entered an agreed order providing

> "[t]hat the parties will engage in informal discovery between themselves over the next 21 days, but if either party is not satisfied with informal financial disclosure[,] they shall make written demand for completion of outstanding discovery; in which case both parties will complete responses to formal discovery within 21 days of the written demand."

As part of the "informal discovery," the parties exchanged comprehensive financial statements. Respondent's statement, which was "an accurate statement as of 7/16/12, of his/her net worth," reported a gross annual income of $40,000 from New Life, net monthly income of $2250, and monthly living expenses in excess of $11,500. Under the portion of the comprehensive financial statement that concerns real property, respondent listed the parties' marital residence under the "Residence" heading, their second home under the "Secondary or vacation residence" heading, and the address of her business under the "Investment or Business Real Estate" heading. Respondent identified no other real estate in her comprehensive financial statement. In the portion of the form providing for disclosure of business interests, respondent listed only New Life. She also left blank the portion of the financial statement providing for disclosure of "not previously listed" real or personal property valued in excess of $500.

¶ 4    Ultimately, the parties both waived formal discovery and entered into a signed marital settlement agreement (MSA) on August 14, 2013. The MSA provided that "[e]ach party is fully informed of the wealth, property, and income of the other, and has waived the right to a full and complete disclosure of their respective financial conditions." It also included several provisions concerning the accuracy and completeness of each party's respective disclosure of their assets. Specifically, the MSA provided that

> "[b]oth parties acknowledge that any information provided is true, complete[,] and accurate, and that no information has been withheld, misrepresented[,] or omitted. Each party acknowledges that he and she have made full disclosure to the other of his and her own wealth, property, estate[,] and income."

¶ 5    On August 28, 2013, during the prove-up hearing, petitioner testified that he waived his right to conduct discovery and that he agreed to waive any interest in New Life and respondent agreed to waive any interest in his medical practice. Petitioner testified that all of his assets noted in the MSA were true and correct to the best of his knowledge and that he did not have an interest in any other asset or property that was not included in the MSA. In respondent's brief testimony during the prove-up hearing, she agreed with her counsel that, if she were asked the same questions that petitioner was asked regarding the MSA, her answers would "be the same or similar." Respondent, likewise, testified that she waived her right to conduct formal discovery. The circuit court entered a judgment of dissolution of marriage, which incorporated the MSA. The marital estate, as described in the MSA, had a total approximate value of $2 million.

¶ 6    More than four years later, on September 29, 2017, petitioner filed a petition under section 2-1401 of the Code to vacate the judgment, based on respondent's alleged fraudulent concealment of the condo. In petitioner's pleadings, including his original section 2-1401 petition, an amended

petition, and a subsequent motion, petitioner alleged the following: "[I]n late winter or early spring of 2017," he received an unsolicited communication from Loren Nelson, co-owner with respondent of New Life. Nelson informed him that respondent failed to disclose that she acquired during the marriage, and continued to own, a condo in Chicago along the lakefront. Petitioner asked respondent whether this information was true, but she replied in a sarcastic manner and did not deny the allegation. Petitioner learned that respondent purchased the condo in 2009 in an all-cash transaction through a single-member limited liability company—SRCM, LLC (the LLC)—that she organized specifically for that purpose. Respondent concealed the existence of the LLC and the condo from petitioner during the dissolution proceedings and thereafter.

¶ 7    Petitioner asserted that, during settlement negotiations in the dissolution proceedings, he relied on respondent's comprehensive financial statement, which did not disclose either the LLC or the condo, notwithstanding respondent's duty to do so. Moreover, respondent made affirmative representations to petitioner that she had disclosed all of her assets, as well as that the MSA completely allocated all of her assets. These representations induced petitioner to cease formal discovery and agree to settle the case. Petitioner also asserted that he "proceeded with due diligence during the time that the case was pending to discover all assets owned by [respondent], but there was no readily available means of discovering this undisclosed asset."

¶ 8    Petitioner argued that, because respondent's ownership of the condo, if known, would have represented approximately one-third of the marital estate, the terms of the MSA were unconscionable because it did not provide for a division of this asset. He also asserted that the two-year limitations period for bringing a section 2-1401 petition should be tolled until the date he learned of the condo—when he received the unsolicited communication from Nelson. See 735 ILCS 5/2-1401(c) (West 2018).

¶ 9     On September 12, 2018, respondent filed a motion to dismiss pursuant to section 2-619 of the Code, which the circuit court denied on October 10, 2018. In so ruling, the court commented:

"I think the recent case law tries to discourage these types of matters *** and that if the parties waive their right to discovery, then they're going to be held to that standard. However, I do think that what's been filed ***, there is a right to a hearing as far as what discovery was tendered and if there was a *** pathway to discovery [*sic*] of this information and somebody waived it, then ideally there is nothing I should do about it if a party decides to stop following the path that would ultimately lead to the items that are in dispute. *** [I]f there is a pathway to where this could have been discovered prior to the entry of judgment, then the case would go nowhere, but if there wasn't, then potentially it goes a different direction."

¶ 10    On July 17, 2019, after limited discovery, respondent filed a motion for summary judgment.[1] Respondent pointed to the court's September 12, 2018, comments, and described them as "indicat[ing] that if the existence of the condo was discoverable during the case pendency, then the motion to vacate would fail." She argued that, if petitioner had undertaken formal discovery, he would have learned of the condo. Specifically, she asserted that petitioner could have deposed either respondent or Nelson and that he could have subpoenaed New Life or its bank seeking

---

[1] Respondent cited section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)), which permits dismissal based on certain defects or defenses, as the statutory basis for the motion, rather than section 2-1005 of the Code, which governs summary judgment. Our review of the motion confirms that respondent intended it as a motion for summary judgment, notwithstanding her citation to section 2-619.

financial records and canceled checks.[2] In support of these assertions, respondent pointed to the recent deposition testimony of Nelson and petitioner. Respondent stressed the following testimony from Nelson's deposition: Prior to the parties' dissolution of marriage, (1) Nelson was aware of the condo and had visited it; (2) some of the funds used to purchase the condo originated from the business; (3) New Life, through Nelson, wrote checks for real estate taxes related to the condo; (4) Nelson knew that respondent also wrote checks from the business for condo assessments; (5) bank records existed that documented that New Life made such payments; and (6) Nelson was neither subpoenaed nor deposed during the parties' dissolution proceedings but, if he had been deposed, he would have been truthful.

¶ 11　Respondent also pointed to petitioner's deposition, wherein he agreed that he waived formal discovery in the dissolution proceedings, that he did not instruct his pre-decree attorney to depose either respondent or Nelson, and that he did not instruct his attorney to issue any subpoenas. Finally, respondent asserted that petitioner "had actual knowledge of the condo" because he had been inside the condo with others prior to the entry of the judgment of dissolution of marriage.

¶ 12　Petitioner responded to the motion for summary judgment by arguing that the motion was, in substance, "a second motion to dismiss," because it cited section 2-619 of the Code and failed to assert that there was no genuine issue of material fact. Petitioner argued that the motion should be denied because it did not assert any affirmative matter that could defeat petitioner's section 2-

---

[2] The record includes copies of three canceled checks issued in December 2008 by New Life. They are made out to "CASH" and total $739,911.52. There are also 23 canceled checks issued by New Life to the Cook County treasurer. They were dated between November 2009 and July 2013, range from $200 to $2600, and all include a property index number on the memo line.

1401 petition but, rather, attempted to refute the allegations in the petition. Petitioner asserted that respondent should not be permitted to contest the factual allegations in the petition, because "[m]aking a showing to the court that other facts exist, facts which could potentially contradict or contest the information contained in the original underlying [petition,] is not the purpose of a motion to dismiss." He maintained that respondent's discovery-oriented arguments did not "support her position that the underlying motion should be *dismissed*, but rather attempts to explained why the underlying [section 2-1401] petition should be *denied*," which is an improper use of a motion to dismiss. (Emphasis added.)

¶ 13 Respondent filed a reply, wherein she reiterated her prior arguments that petitioner could have discovered the existence of the condo during the parties' dissolution proceedings and she relied on *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, for the proposition that a party may not reopen a judgment for dissolution of marriage based upon a nondisclosure if said moving party failed to complete discovery. Respondent argued that "no question of fact exists" and that summary judgment in her favor was therefore appropriate.

¶ 14 On September 20, 2019, after a hearing, the circuit court granted respondent's motion for summary judgment. The court expressly relied on *Goldsmith*, which it found

"very enlightening and controlling in these matters because we tend to see these all the time. *** [W]hat [*Goldsmith*] tells us is that we need to recognize that these divorce proceedings are adversarial in nature. We need to recognize that the rules for discovery are there for a reason. *** At the end of the day, there is a process available to do complete discovery of everything, and if you decide to affirmatively waive that, it's at your own peril. I don't think that you then get to *** reopen the door by coming in later and trying to see if we can find a way back in to redo the litigation."

¶ 15    Petitioner moved to reconsider. He asserted that he pleaded all the necessary elements to allege a claim of fraud and that the issue of whether he exercised due diligence could not be resolved in a motion for summary judgment. He further argued that *Goldsmith* was distinguishable because, here, he alleged that respondent "perpetuated a fraud in the concealment of her ownership interest" in the condo.

¶ 16    On February 11, 2020, after hearing argument from the parties, the circuit court denied petitioner's motion to reconsider. It reasoned that *Goldsmith* sent

> "a message to us that you do your job when the case is pending because we can't just leave these open-ended questions forever and ever regardless of the reasons why we want to reopen it, but we can't leave those questions open if you didn't do your diligence at the time that the case was being resolved."

¶ 17    Petitioner filed a timely notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19    Judgments for dissolution of marriage are entitled to the same degree of finality as are judgments in other proceedings, even in those judgments that incorporate an MSA. *In re Marriage of Onishi-Chong*, 2020 IL App (2d) 180824, ¶ 28; *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 55. Section 2-1401 of the Code provides a comprehensive statutory mechanism for obtaining relief from final judgments or orders that are older than 30 days. See 735 ILCS 5/2-1401 (West 2016). The purpose of a section 2-1401 petition is to provide a statutory method to bring before the court facts not appearing in the record that, if known at the time of the entry of the judgment, would have prevented its rendition. *In re Marriage of Broday*, 256 Ill. App. 3d 699, 705 (1993). Courts apply section 2-1401 with the aim of achieving justice, but a proceeding under this

provision is not "intended to give a litigant a new opportunity to do that which should have been done in an earlier proceeding." *In re Marriage of Travlos*, 218 Ill. App. 3d 1030, 1035 (1991).

¶ 20     A petition filed under section 2-1401 may present "either a factual or legal challenge to a final judgment or order." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Where the petition raises a factual challenge to a judgment, as is the case here, the petitioner must, in order to be entitled to relief, affirmatively plead specific factual allegations to support each of the following three elements: (1) the existence of a meritorious claim, (2) due diligence in presenting that claim in the original action, and (3) due diligence in seeking relief under section 2-1401. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). Fraud, if proved, is an appropriate ground for vacating or modifying a judgment of dissolution of marriage. See *Broday*, 256 Ill. App. 3d at 702-03. When a section 2-1401 petition alleges fraudulent concealment, that issue is analyzed in the context of the due diligence requirement. *In re Marriage of Halas*, 173 Ill. App. 3d 218, 224 (1988). Indeed, "fraudulent concealment of evidence is a factor in determining whether a section 2-1401 petitioner exercised due diligence in discovering and presenting the ground for relief." *Travlos*, 218 Ill. App. 3d at 1037. When a section 2-1401 petition is premised on newly discovered evidence, "the petitioner must show the new evidence was not known to [him or] her at the time of the proceeding and could not have been discovered by the petitioner with the exercise of reasonable diligence." *Goldsmith*, 2011 IL App (1st) 093448, ¶ 15. Stated another way, "the evidence must be such as could not reasonably have been discovered at the time of or prior to the entry of the judgment." *Buck*, 318 Ill. App. 3d at 493; see also *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996).

¶ 21     In a proceeding under section 2-1401, there are five possible outcomes. The trial judge may dismiss the petition, grant or deny the petition on the pleadings alone (summary judgment), or

grant or deny the relief after holding a hearing where factual disputes are resolved. *Goldsmith*, 2011 IL App (1st) 093448, ¶ 15. The appropriate standard of review on appeal depends on the nature of the challenge to the section 2-1401 petition. See *Warren County*, 2015 IL 117783, ¶ 31.

¶ 22    In this case, the circuit court granted respondent's motion for summary judgment and disposed of petitioner's section 2-1401 petition. Motions for summary judgment are provided for in section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2018)) and should be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* § 2-1005(c). In evaluating whether there exists a genuine issue as to any material fact, the circuit court must construe the pleadings and evidentiary material in the record strictly against the movant and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* Summary judgment is a "drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We review *de novo* a circuit court's grant of summary judgment. *Id.* "On *de novo* review, all of the petitioner's well-pled allegations are accepted as true." *Goldsmith*, 2011 IL App (1st) 093448, ¶ 18.

¶ 23    We agree with petitioner that the circuit court's grant of summary judgment in favor of respondent was erroneous. In entering summary judgment, the circuit court relied on *Goldsmith* and concluded that relief under section 2-1401 of the Code was foreclosed because petitioner waived formal discovery in the original proceedings and such waiver demonstrated a lack of due

diligence as a matter of law. Put simply, the circuit court read *Goldsmith* too broadly and overlooked a critical distinction between it and the instant matter.

¶ 24    In *Goldsmith*, the parties' judgment of dissolution of marriage incorporated an MSA by agreement. *Id.* ¶ 1. They acknowledged in the MSA that they had engaged in limited discovery, but they both represented and warranted that they fully disclosed their property to the other. *Id.* At the prove-up hearing, the petitioner testified that she relied on the respondent's full disclosure of his assets in entering into the MSA. *Id.* ¶ 6. She also agreed that the MSA, based on the respondent's asset disclosure, was fair and reasonable, " '[i]f it is all true.' " *Id.*

¶ 25    More than one year later, the petitioner filed a section 2-1401 petition alleging that the respondent failed to disclose three assets that had a combined value of nearly $2 million, namely: a $1.3 million recovery from a lawsuit, which was filed during the marriage although the recovery was not received until after the dissolution (*id.* ¶¶ 7-8); jointly held bank stock worth $300,000 (*id.* ¶ 7); and approximately $300,000 in federal tax refunds received after the respondent, post dissolution, amended a joint tax return that was filed during the marriage (*id.* ¶¶ 7, 10).

¶ 26    In her section 2-1401 petition, the petitioner argued that she had a meritorious claim as to each asset and that she acted with diligence in relying on both the respondent's asset disclosure letter and his representation of full disclosure in the MSA. *Id.* ¶ 7. The respondent moved for summary judgment, arguing that the petitioner's claims lacked merit and that she failed to demonstrate due diligence in the original proceeding. *Id.* ¶ 11. The trial court granted the respondent's motion, reasoning that the petitioner either knew of or reasonably could have discovered the assets earlier, the petitioner had not asserted a fraudulent concealment claim in her petition, and, in any event, her pleadings did not present credible evidence that the husband fraudulently concealed the subject assets. *Id.*

¶ 27    The First District affirmed, reasoning that the petitioner failed to raise a meritorious claim over any of the three assets. Specifically, (1) the lawsuit proceeds, although not formally disclosed to the petitioner, were the respondent's nonmarital property; (2) the jointly held bank assets and their value were disclosed by the respondent in his affidavit; and (3) the federal tax refund belonged to the husband under the MSA. *Id.* ¶¶ 26-45. Although the court expressly rejected the petitioner's arguments that she had a meritorious claim over each asset, which it deemed "fatal to her petition," the court continued:

> "[W]e elect to address the [petitioner's] claim that she acted with legal due diligence based on her reliance on the representation and warranty in the MSA and the [respondent's] unsigned affidavit. We do so to make clear that the [petitioner's] contention of legal diligence based on reliance, in lieu of formal discovery, is without support in Illinois law. When a divorce party elects to forego [*sic*] formal discovery in favor of accepting a representation and warranty of full and complete disclosure, the party does so at his or her own peril. We emphasize that this case does not present a question of fraudulent concealment of assets, as the trial court found below." *Id.* ¶ 47.

The court found that, under the circumstances, the petitioner did not exercise due diligence when she "elected to accept the [respondent's] 'representation and warranty' [(in the MSA)] over the opportunity to engage in formal discovery." *Id.* ¶ 49. It also found that the petitioner's testimony at the prove-up hearing did not bolster her argument, because she gave a qualified response, " 'if it is all true,' " when her attorney questioned her concerning her acceptance of the respondent's asset disclosure. *Id.* The court continued:

> "A representation and warranty of full disclosure in a marital settlement agreement, even when the full disclosure is confirmed by affidavit (albeit unsigned here) cannot be

used as an escape hatch to avoid the consequences of failing to act diligently in the first instance by engaging in sufficient discovery, a proposition that has been long established in Illinois law. 'A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations.' " (Internal quotation marks omitted.) *Id.* ¶ 51 (quoting *Lagen v. Lagen*, 14 Ill. App. 3d 74, 81 (1973)).

¶ 28    *Goldsmith* is distinguishable. There, the court expressly "emphasize[d] that this case does not present a question of fraudulent concealment of assets." *Id.* ¶ 47. The court observed that the petitioner did not "assert a fraudulent concealment claim in her motion to vacate" and she did not present any credible evidence that the respondent fraudulently concealed the contested assets. *Id.* ¶ 11. *Goldsmith* understandably emphasized the absence of a fraudulent concealment claim in the petitioner's section 2-1401 petition because it is well established that "fraudulent concealment of evidence is a factor in determining whether a section 2-1401 petitioner exercised due diligence in discovering and presenting the ground for relief." *Travlos*, 218 Ill. App. 3d at 1037. This is so because, "when an opponent suppresses information, as to prevent the inquirer from realizing what has occurred, the failure to discover the information is the result of the opponent's fault and not the inquirer's negligence." *Id.*; see also *Halas*, 173 Ill. App. 3d at 224 (observing that "the issue of fraudulent concealment is necessarily analyzed in the context of the due diligence requirement"). The circuit court's reading of *Goldsmith* as barring the receipt of relief under section 2-1401 of the Code—even when the petition presents a fraudulent concealment claim—

overlooks the maxim that "[d]ue diligence is judged by the reasonableness of a petitioner's conduct under the circumstances." *Goldsmith*, 2011 IL App (1st) 093448, ¶ 49 (citing *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99-101 (2006)).

¶ 29    Unlike in *Goldsmith*, petitioner's section 2-1401 petition explicitly alleged fraudulent concealment of the condo.

> "To prove fraud, the complainant must show that the other party falsely stated a material fact or concealed a material fact that he had a duty to disclose; the fact was intentionally misstated or concealed to induce the complainant to act; and that the complainant detrimentally relied upon the misstatement or the nonexistence of the fact. The complainant bears the burden of proving fraud by clear and convincing evidence." *Travlos*, 218 Ill. App. 3d at 1037.

See also *Broday*, 256 Ill. App. 3d at 703 (the petitioner "must show by clear and convincing evidence that [the respondent] intentionally misstated or concealed a material fact which he had a duty to disclose and that [the petitioner] detrimentally relied upon [the respondent's] statement or conduct").

¶ 30    Here, the allegations in petitioner's pleadings, if accepted as true, sufficiently state a claim of fraudulent concealment. He alleged that, during the pendency of the dissolution proceedings, respondent tendered her comprehensive financial statement and affirmatively misrepresented to him that all of her assets were disclosed in it and accounted for in the MSA. He further alleged that, in reliance on those affirmative statements, he was induced to discontinue discovery in favor of settling the case. Years after the marriage was dissolved, petitioner was told by Nelson that respondent had concealed during the divorce proceedings a condo in Chicago worth more than $800,000. Through further investigation, petitioner learned that respondent purchased the property

in 2009, during the marriage, through a single-member LLC that she organized for that singular purpose. She paid for the property with cash she derived from New Life, with the inference that the external source of the funds would not arouse petitioner's suspicions. Petitioner further alleged that respondent disclosed the existence of neither the condo nor the LLC that owned it prior to the entry of the judgment of dissolution of marriage and that he had no reason to suspect that respondent or her undisclosed LLC owned the condo. In short, the trial court erred in failing to consider petitioner's fraudulent concealment claim, which, when applicable, should be "a factor" to consider in evaluating a section 2-1401 petitioner's diligence. See *Travlos*, 218 Ill. App. 3d at 1037. The circuit court impermissibly sidestepped that analysis in favor of a prohibition on obtaining relief under section 2-1401 of the Code whenever a party waives formal discovery, and without considering the particular facts and circumstances of the case. To stretch the rule of *Goldsmith* to apply to cases where fraudulent concealment is sufficiently alleged, as is the case here, would incentivize litigants to be less than forthcoming in their disclosure of assets whenever divorcing parties opt to forgo formal discovery.

¶ 31    In light of the well-pleaded fraudulent concealment claim advanced in plaintiff's section 2-1401 petition, as well as the circuit court's express recognition that it did not evaluate the particulars of petitioner's level of due diligence,[3] we believe that *Buck*, 318 Ill. App. 3d 489, provides a better guide for our analysis. In *Buck*, the petitioner filed a section 2-1401 petition seeking reformation of the parties' MSA on the ground that the respondent, during the dissolution

_____

[3] In reiterating its ruling during a later-held hearing, the circuit court judge explained: "My prior ruling was not based on his lack of due diligence. My prior ruling was based on his waiver of formal discovery."

proceedings, fraudulently concealed certain real property interests he held through his company. *Id.* at 492. Although the petitioner in *Buck* was aware of the respondent's company when they entered into the MSA, she alleged that the respondent affirmatively misrepresented to her that the company owned only office furniture and equipment and that the company's stock had little or no value. *Id.* at 494. The petitioner also alleged that, at the same time the respondent acquired an interest in one parcel of real estate, the respondent concealed that he, through his company, acquired an interest in two additional parcels. *Id.* The petitioner did not take any discovery of the respondent's assets prior to entering the MSA (*id.* at 495), which stated that both parties were " 'fully informed of each other's wealth, property, estate and income' " (*id.* at 491). The respondent moved to dismiss, arguing that the existence of his company's interests in the real estate reasonably could have been discovered through discovery during the dissolution proceedings. *Id.* at 497. The trial court granted the respondent's motion and dismissed the section 2-1401 petition without allowing an evidentiary hearing, reasoning that the petitioner's failure to conduct any discovery prior to entering into the MSA demonstrated a lack of due diligence in the original action. *Id.* at 493.

¶ 32    The appellate court reversed because, taking the petitioner's allegations as true, it concluded that she sufficiently alleged that the respondent fraudulently concealed the assets at issue and showed due diligence in presenting the claim in the divorce proceedings. *Id.* at 497. In so holding, the court specifically declined to hold that it is a *per se* lack of diligence not to take discovery[4] in a divorce action. *Id.* at 495. It further held that, "where the allegations in the section

_____

[4] We note that *Goldsmith* cited, but did not discuss or analyze, *Buck*. See *Goldsmith*, 2011 IL App (1st) 093448, ¶ 15 (citing *Buck* for the general elements necessary to be entitled to relief

2-1401 petition and the attached exhibits sufficiently state a claim for fraudulent concealment if true, the trial court must conduct an evidentiary hearing before granting a motion to dismiss." *Id.* at 497. The *Buck* court stressed the need to conduct an evidentiary hearing to determine the unresolved contested issue of fact, namely whether the petitioner's reliance on the respondent's statements was reasonable. *Id.* at 498. "Ultimately, whether [the] petitioner's reliance on [the] respondent's statements was reasonable is a question of fact that would be determinative of whether she practiced due diligence at the time of the original proceeding." *Id.* at 497; see also *Travlos*, 218 Ill. App. 3d at 1038 ("[t]he issue of detrimental reliance necessarily includes the question of whether [the petitioner] had a right to rely on [the respondent's] alleged misrepresentations").

¶ 33     Here, petitioner's decision to forgo formal discovery is not a *per se* lack of diligence. *Buck*, 318 Ill. App. 3d at 495. Just as in *Buck*, an evidentiary hearing was needed before granting respondent's motion for summary judgment, because, in the absence of such a hearing, the circuit court failed to properly evaluate petitioner's level of diligence in the original proceeding within the context of his claim of fraudulent concealment. The circuit court's statements explaining its grant of summary judgment suggest, at best, that it merely doubted that respondent fraudulently concealed the condo:

> "THE COURT: If we can see that this was an intentional method by which we tried to conceal something that's one thing. Here I'm hearing that this property was owned by a business that [petitioner] knew but there was—

_____

under section 2-1401 of the Code). We further note that respondent does not address petitioner's argument that "[t]his case is no different" than *Buck*, nor does she cite *Buck*.

PETITIONER'S COUNSEL: That's not correct.

THE COURT:—all these different methods by which this could have been found out, so all these different records to whoever was making the payments. There was opportunity *** to eventually get to this property, and it was easily—seems like it was kind of easily figured out now [that] formal, quote, unquote, discovery took place, which tells me it could have happened probably easier six years ago in the litigation before the judgment entered at that time."

¶ 34    In short, the circuit court erred in discounting petitioner's fraudulent concealment claim without the benefit of a full evidentiary hearing on the issue of petitioner's level of diligence in presenting the claim in the original action. Whether petitioner exercised due diligence under the circumstances necessarily depends on a variety of factors, including whether he knew or reasonably should have known of respondent's ownership interest in the condo prior to entering into the MSA, whether respondent intentionally misrepresented her assets or concealed the condo from petitioner, and whether petitioner reasonably relied to his detriment on respondent's representations, including those made during settlement negotiations, in her comprehensive financial statement and at the prove-up hearing. See *id.* at 494, 497-98. In its present form, the record is devoid of factual findings answering any of these questions. Whether petitioner's reliance on respondent's representations was warranted under the circumstances of this case is not an issue that is amenable to resolution by summary judgment and requires an evidentiary hearing.

¶ 35    *In re Sassano*, 337 Ill. App. 3d 186 (2003), is also instructive. There, we stated that "[o]rders entered in the context of a dissolution of marriage case may be vacated or modified if procured through fraud, and a consent decree may be modified where its execution has been obtained through misrepresentation." *Id.* at 194. There, the parties waived formal discovery to

expedite the litigation (*id.* at 196), and they entered into a settlement agreement that expressly acknowledged that they proceeded " 'without such formal discovery and without formal investigation of the assets, liabilities, of their joint or mutual assets, of his or her own assets, and of the assets of the other party' " (*id.* at 188-89). The agreement further acknowledged that they entered into the agreement " 'despite the known and unknown assets, income, or liabilities of the other.' " *Id.* at 189. At the prove-up hearing, the respondent testified that he was self-employed and had fully disclosed all of his assets, but he did not specify his current salary. *Id.* The respondent did not disclose at the prove-up hearing that, approximately three weeks earlier, he obtained a second job that increased his projected annual gross income from $80,000 to $202,000. *Id.* at 189-90. Following the prove-up hearing, the parties' marriage was dissolved pursuant to the settlement agreement, which did not reflect the respondent's additional income. *Id.* at 190.

¶ 36    After the respondent lost his second job, he moved to modify his support obligations under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a) (West 2000)), alleging that the loss of the additional employment was a substantial change in circumstances. *Sassano*, 337 Ill. App. 3d at 189. At the hearing on his motion, the respondent acknowledged that he did not disclose his full employment to the petitioner during the negotiations leading to the MSA, nor had he previously disclosed it to his attorney or the court. *Id.* at 190. The trial court denied the respondent's motion because his additional employment was a fact known only to him during the dissolution and he could not use the loss of that job to support a substantial change in circumstances. *Id.* at 190-91.

¶ 37    We affirmed, reasoning that the respondent's statement during settlement negotiations that he earned $80,000 from just one job was "conscious nondisclosure of his additional income[, which] amounted to a false statement of material fact upon which petitioner reasonably relied to

her detriment." *Id.* at 195. It further stated that the respondent had a duty to disclose the change in his employment status prior to the entry of the dissolution judgment and the withheld information "would have certainly affected the settlement negotiations." *Id.* In so holding, the court was expressly persuaded by *In re Marriage of Gurin*, 212 Ill. App. 3d 806 (1991) (respondent's) nondisclosure of impending employment during negotiations fraudulently induced petitioner to enter into the MSA, which stated both parties had disclosed all their assets). In upholding the modification of the judgment, the *Sassano* court cogently explained:

"The record indicates that the trial court and the attorneys had no reason to inquire about [the] respondent's income at the dissolution proceeding because [the respondent] expressly testified that he had 'made a full disclosure of all the assets [he] acquired during the marriage.' However, if [the respondent] had undertaken even the most basic disclosure, [the petitioner] would have known of his [additional] employment ***, and this information would have affected her decision to acquiesce in the settlement. Furthermore, [the respondent's] affirmation at the prove-up hearing essentially negated the settlement agreement provision in which each party waived his or her right to formal discovery of the other party's assets. Nevertheless, the provision waiving discovery did not authorize [the respondent] to perpetrate a fraud on [the] petitioner and the trial court, as the trial court found." *Sassano*, 337 Ill. App. 3d at 196.

Although *Sassano* involved a motion to reduce support obligations, our rationale there applies equally to a petition to vacate a judgment under section 2-1401 of the Code that raises an issue of material fact as to whether an MSA was procured by fraud.

.

¶ 38    Respondent asserts that, in *Onishi-Chong*, 2020 IL App (2d) 180824, this court was presented with the "same issue" as in the instant matter, such that we should reach the same result—affirmance of summary judgment against a section 2-1401 petitioner based on a lack of diligence in the original proceeding. In *Onishi-Chong*, the parties litigated their divorce for nearly two years, during which they engaged in full discovery (*id.* ¶ 5) and jointly retained a business valuation expert to value the respondent's business, of which he was a 50% owner (*id.* ¶¶ 6-7). The respondent represented that he earned $240,000 to $365,000 at the time the divorce pended. *Id.* ¶ 5. After the expert submitted his report, the petitioner tendered to the circuit court her pretrial memorandum, in which she alleged that the respondent intentionally reduced his income during the divorce to lessen his support obligations and that he "fraudulently conceal[ed] the scheme." *Id.* ¶¶ 38, 46. According to her memorandum, the petitioner believed that the respondent's true income exceeded $518,000 per year. *Id.* ¶ 6. Notwithstanding her suspicions, however, she voluntarily settled the case and entered into an MSA. *Id.* ¶ 8. The terms of the agreement were detailed at the prove-up hearing, where both parties testified that, based on the completed discovery, they were satisfied that there was a complete disclosure of income, assets, and liabilities and that they wished to cease discovery. *Id.* ¶ 9.

¶ 39    Two years after the judgment was entered, the petitioner filed a section 2-1401 petition alleging that the respondent had concealed his actual income and conspired with his business partner to shelter his income from the divorce proceedings. *Id.* ¶¶ 13-14. She alleged that the respondent and his business partner conspired to structure the respondent's compensation so that, during the divorce, his pay was significantly less than that of his business partner and, after the divorce, they " 'trued up' " the respondent's underreported compensation and the respondent began to receive more than his partner. *Id.* ¶ 15. The respondent moved for summary judgment

arguing, among other points, that the petitioner harbored this suspicion before the divorce, during which she "raised the same claim regarding [the] respondent's *** alleged scheme." *Id.* ¶¶ 21-22. The circuit court granted the respondent's motion for summary judgment (*id.* ¶ 23), reasoning, in part, that the petitioner did not exercise diligence in the original proceeding because she had knowledge of facts supporting the claims that she advanced in her section 2-1401 petition but did not pursue them before settling the case (*id.* ¶ 33).

¶ 40 We affirmed on appeal, reasoning that the record showed that the petitioner failed to exercise reasonable diligence in presenting her claims to the circuit court before entering into the MSA. *Id.* ¶¶ 48, 53. In so holding, we repeatedly stressed that the petitioner suspected that the respondent manipulated his income during the original proceedings. For example, we noted that the petitioner's memorandum "set[ ] forth in detail the allegations [she] is reclaiming in her section 2-1401 petition" and stated her belief that the respondent intentionally reduced his income to decrease his support obligations. *Id.* ¶ 34. We also observed that the memorandum showed that the petitioner "had knowledge that there was a disparity in income but chose to settle without pressing the issue with further discovery or raising the issue at trial." *Id.* We also stated that, "before [the petitioner] entered into the MSA, [she] had information supporting her claim of a scheme to reduce [the] respondent's income," as well as that she "had information that [the respondent's] income had decreased before the divorce," which prompted her to claim in her pretrial memorandum that he "was intentionally reporting less income to reduce his support obligation." *Id.* ¶ 38. Similarly, we observed that the petitioner "raised her concerns about [the] respondent's income prejudgment, but she voluntarily proved up and settled instead of pursuing her suspicions." *Id.* ¶ 43. Finally, we noted that, even after she received a final report from the parties' jointly retained business valuation expert, the petitioner "submitted her pretrial memorandum, which showed that she did not accept

[the] respondent's explanation for the income disparity" yet she ceased discovery when "[s]he clearly suspected *** that [the] respondent was making more money." *Id.* ¶ 46. We found " 'disingenuous' " the petitioner's argument that the respondent "was concealing more money than she knew" about. *Id.* We concluded that the record reflected that the petitioner failed to exercise reasonable diligence in presenting her claims to the circuit court prior to settling the case where she "was provided an adequate opportunity to determine the truth of her allegation, and she raised the issue in the divorce proceeding but opted to settle her case despite her concerns." *Id.* ¶¶ 47-48.

¶ 41    Although the instant case is like *Onishi-Chong* because both cases involve a section 2-1401 petition grounded in the alleged concealment of assets, there is a critical distinction between the two cases that respondent largely glosses over in her brief. In *Onishi-Chong*, the record reflected that the petitioner "clearly suspected" during pretrial proceedings that the respondent had engaged in a scheme to reduce his income during the divorce, yet she opted to settle the case anyway, despite those concerns. *Id.* ¶ 46. Here, conversely, the record bears no affirmative indication that petitioner suspected, prior to the judgment, that respondent had concealed any asset or that he otherwise failed to investigate any suspicions he may have harbored. In *Onishi-Chong*, the petitioner's prejudgment suspicions appeared within her own memoranda filed with the circuit court. Here, the parties steadfastly disagree about whether petitioner had knowledge of the condo during the dissolution proceedings, and petitioner certainly has not conceded this point either in the court below or on appeal. Respondent asserts in her brief that "the undisputed evidence established that [petitioner] *** knew of the existence of the condo," as well as that petitioner, respondent, "and friends discussed or visited the condo before their separation." Petitioner denies these allegations and asserts that he "had no reason to believe the *** condo existed" or that respondent had sufficient funds to purchase it, and that there was no indication of any asset

manipulation. Petitioner stresses that in her comprehensive financial statement respondent disclosed $40,000 in gross annual income from all sources, such that he had no reason to suspect that respondent had "squirreled away $730,000 in cash" to purchase the condo through an undisclosed LLC.

¶ 42     As petitioner notes, the other cases respondent cites rejecting section 2-1401 petitions all involved instances where the petitioner either knew of the allegedly concealed asset or was on notice about potential irregularities but failed to investigate further. Although respondent cites these cases, they have the practical effect, here, of reinforcing the need for an evidentiary hearing regarding whether petitioner exercised due diligence in the original proceedings. See *Himmel*, 285 Ill. App. 3d at 148-49 (affirming trial court's determination, made after an evidentiary hearing, that there was no fraudulent concealment, because the petitioner "clearly knew of the pension, but took no timely affirmative action to discover its value or to assert his claim to it," and there was no evidence that the respondent intentionally misrepresented or concealed it); *Halas*, 173 Ill. App. 3d at 226 (no due diligence where the petitioner's own deposition reflected that she was aware of potential inaccuracies in the representations of the respondent's net worth when her attorney warned her that the respondent's handwritten list of assets was incomplete and inaccurate); *Lyman*, 2015 IL App (1st) 132832, ¶¶ 65, 83 (no due diligence where the petitioner agreed that the respondent would receive specified business interests without an obligation to disclose the value of those interests and the petitioner ceased her investigation to determine the value); *Broday*, 256 Ill. App. 3d at 703-04 (no fraud where the respondent lacked intent to deceive, the allegedly concealed asset was disclosed in the MSA, and the petitioner had ample opportunity to investigate the respondent's assets by conducting her own investigation or by hiring an attorney); *Travlos*, 218 Ill. App. 3d at 1037-38 (no fraudulent concealment where the respondent disclosed interest in

real property but stated her belief that a foreign court divested her of that interest, she told the petitioner that her attorney had information regarding the property, and the petitioner had notice of the foreign litigation but did not investigate the results of the appeal); *Onishi-Chong*, 2020 IL App (2d) 180824, ¶¶ 47-48 (no diligence where the petitioner was aware of the respondent's income source and sudden reduction but settled the case despite her concerns).

¶ 43    Moreover, we observe that the necessity of an evidentiary hearing on the issue of petitioner's diligence is underscored by proceedings that occurred subsequent to the circuit court's grant of summary judgment. After petitioner filed his notice of appeal, respondent filed a motion for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), alleging that petitioner's section 2-1401 petition was not well grounded in fact because he "had knowledge of the property, but also actually visited the property on at least one occasion prior to the entry of the MSA." Respondent attached to the motion several affidavits from individuals averring that they had conversations with petitioner regarding the property the same year that respondent acquired it through the LLC. The affiants later amended their respective affidavits. Because of the pendency of the motion for sanctions, and pursuant to petitioner's motion in this court, we stayed the appeal pending resolution of respondent's motion in the circuit court. The circuit court ultimately denied respondent's motion for sanctions after a hearing, and the stay was lifted. Pertinently, in denying the motion, the circuit court commented:

> "I've heard evidence that, and I can piece it together for you, but what I've now heard over the last three days the case [*sic*] that I didn't expect to hear once I granted the motion for summary judgment now on the motion for sanctions.
>
> There is an argument here that there was a relationship between [respondent] and Mr. Nelson, that [the condo] was acquired during the time when they were in the

relationship, that he helped somehow facilitate the purchase of this, and that she wanted this property because she wanted something for herself. Was there a basis to want to conceal this during the—during the proceedings? Sure. I'm not making that finding whether it was or not, but is there an argument to be made based on what occurred here? Absolutely."

Concerning the affidavits offered in support of respondent's motion for sanctions, the circuit court was "at a loss" to reconcile the discrepancies between the original and the amended affidavits, and it observed that there was "some impeachment there" and that aspects of the witnesses' explanations did not "make any sense." Finally, the court commented that there were "so many moving parts to this that it's impossible for me to say that there wasn't a good faith argument to be made by [petitioner] in filing his petition [under section 2-]1401."

¶ 44    Again, the circuit court has not determined which party's position, if either, is credible or supported by the evidence. These questions, of course, cannot be resolved on appeal based on the current record. As such, we remand for a full evidentiary hearing to allow the trial court to make the necessary findings as to petitioner's diligence in the original action, including whether petitioner knew or reasonably should have known of the condo, whether respondent intentionally misstated or concealed her ownership interest in the condo and, if so, whether petitioner's reliance on respondent's statements was reasonable under the particular facts and circumstances of this case. See *Buck*, 318 Ill. App. 3d at 494, 498.

¶ 45                                    III. CONCLUSION

¶ 46    For the reasons stated, we reverse the order of the circuit court of Kane County and remand for further proceedings in accordance with this opinion.

¶ 47    Reversed and remanded.

---

**No. 2-20-0160**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Brubaker*, 2022 IL App (2d) 200160 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 11-D-1408; the Hon. René Cruz, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Brian J. Hurst and Olga A. Allen, of Hurst, Robin & Kay, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Steven H. Klein and Catherine Basque Weiler, of Swanson Martin & Bell, LLP, of Chicago, for appellee. |

---