NOTICE
Decision filed 04/08/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240405-U

NOS. 5-24-0405, 5-24-0593 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| DELLA R.K. FIELD, | ) | Bond County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 13-D-1 |
| | ) | |
| DENNIS M. FIELD, | ) | Honorable |
| | ) | Maureen D. Schuette, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE CLARKE* delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's orders entered December 4, 2023, February 22, 2024, March 4, 2024, and April 4, 2024, are affirmed in part and reversed in part. The portions of the orders addressing attorney fees, sanctions, the trial court's consideration of the motion for additional child support for the period from 2016 through 2022, and the trial court's determinations of income are affirmed. The portions of the orders addressing the dependent child-in-care credit, the imputation of income, and the calculation of statutory interest are reversed and remanded with directions.

¶ 2    In this appeal, multiple postdissolution orders are involved. *Pro se* appellant, Dennis M. Field, filed three separate appeals from the trial court's orders entered on December 4, 2023, February 22, 2024, March 4, 2024, and April 4, 2024.[1] On July 5, 2024, the appellant filed a motion

_____

*Justice Moore was originally assigned to the panel before his retirement. Justice Clarke was substituted on the panel and has listened to oral arguments and read the briefs.

to consolidate the appeals, in part to simplify briefing, which was granted by this court on July 11, 2024. In appellate court case 5-24-0405, Dennis filed his first notice of appeal on March 21, 2024, and appealed the December 4, 2023, order awarding Della attorney fees as well as sanctions against Dennis, and the February 22, 2024, order denying his motion to reconsider. In appellate court case 5-24-0467,[2] Dennis filed his second notice of appeal on April 2, 2024, and appealed the March 4, 2024, order[3] which found Dennis in indirect civil contempt, awarded Della attorney fees, and made a preliminary determination in favor of Della on the issue of additional child support payment with the calculations of the amounts to later be submitted to the trial court. In appellate court case 5-24-0593, Dennis filed his third notice of appeal on April 30, 2024, and appealed the April 4, 2024, order, which contained the calculated amounts of additional child support payment owed by Dennis.

¶ 3                                 I. BACKGROUND

¶ 4      Della R.K. Field (Della) and Dennis M. Field (Dennis) were married in 2005. On September 30, 2013, the parties entered into a marital settlement agreement. We note that in March of 2019, this court issued an order in *In re Marriage of Field*, 2019 IL App (5th) 160405-U, resolving a previous appeal[4] between the parties. In that case, we engaged in a more detailed recitation of the facts in the previous order and thus we only recite those facts which are necessary

---

[1]The respective appellate court case numbers are 5-24-0405, 5-24-0467, and 5-24-0593.

[2]On March 19, 2025, this court severed Appellate Court, Fifth District case No. 5-24-0467 for disposition. A summary order was filed on April 9, 2025. Therein, we lacked jurisdiction to reach the ultimate issue of additional child support payment and determined that the March 4, 2024, order "on Della's petition for additional child support payment did not become final until the entry of the April 4, 2024, order, which included the final calculations for the true up ***." Where the final and appealable April 4, 2024, order is now the subject of the present appeal, the "final judgment draws into issue all prior interlocutory orders which produced the final judgment," specifically the March 4, 2024, order. *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 307 Ill. App. 3d 528, 538 (1999).

[3]We note that appellant's notice of appeal in 5-24-0467 incorrectly lists March 5, 2024, as the order appealed from; however, upon a review of the record, the correct date is March 4, 2024.

[4]Illinois Appellate Court, Fifth District, case No. 5-16-0405.

for the disposition of this appeal. The parties have filed numerous postdissolution petitions throughout this case. The majority of these motions remained pending in the trial court for several years before a hearing was held and an order was entered disposing of them.

¶ 5    On August 7, 2017, Della filed with the trial court a motion for payment of additional child support (this was in effect a motion for a true-up) pursuant to the parties' marital settlement agreement, the relevant portion of which reads:

> "Husband shall pay the 'base amount' of child support each month in the amount of $1,300.00 retroactive to January, 2013. In addition thereto, husband shall pay 28% of any other income received by a payment of loans to shareholders, wages, bonuses, dividends or income from any other source as defined in the [Illinois Marriage and Dissolution of Marriage Act]. Husband shall pay 28%, less the monthly base amount of child support so that husband's child support each year shall be 28% of his statutory net income. To effectuate the terms hereof, husband agrees to provide wife with his properly completed federal and state tax returns, as well as the tax return for his business corporation, each year, by March 31st. By way of example only, in the event husband's net income for any year was $100,000.00, he would owe a total of $28,000.00 as and for child support for the year; assuming husband has paid the $1,300.00 per month, he would have paid $15,600.00 in child support, husband would owe the difference between the two figures or $12,400.00 to wife through payments from his other income."

In the motion, Della requested that the court establish the amount of past-due support for the year 2016, award attorney fees for bringing the motion, and require Dennis to pay interest on the past-due amount.

3

¶ 6    On July 24, 2019, Della filed with the trial court a petition for attorney fees related to the parties' 2016 appeal. In her petition, she sought contribution from Dennis in the amount of $13,964.27 under section 508(a)(3) and (6) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(a)(3), (6) (West 2018)), which permits attorney fee awards in family law cases upon successful defense of an appeal. She did so on the grounds that she had successfully defended the previous appeal and that Dennis earned "in excess of three times the amount that she does," so requiring him to pay her attorney fees directly to the attorney would not be inequitable.

¶ 7    On January 27, 2021, Della once again filed with the trial court a petition for attorney fees related to the 2016 appeal. This petition was nearly identical to the earlier petition for attorney fees filed July 24, 2019, with the only substantive difference being the prayer for relief requesting that Dennis now pay Della instead of the attorney directly.

¶ 8    On February 8, 2021, Della again filed with the trial court a petition for attorney fees related to the previous 2016 appeal, this time filing it as an amended petition. This amended petition was nearly identical to the previous two petitions for attorney fees and contained no substantive changes from the January 27, 2021, petition.

¶ 9    On February 18, 2021, Dennis filed his answer to the February 8, 2021, amended petition for attorney fees related to the 2016 appeal. In it, Dennis denied the allegation that he earns three times the amount that Della earns, stating that he had retired. He also argued that Della had received substantial amounts of property and assets in their divorce settlement, which would be sufficient for her to cover the fees herself.

¶ 10    On March 11, 2022, Della filed with the trial court a motion for sanctions for the filing of an inaccurate financial affidavit by Dennis. In the motion, Della alleges that Dennis did not use the proper form for the financial affidavit as he used an old version, he listed that he had no income

4

while showing a business account with assets in it, the affidavit did not show income his tax return did, and he failed to attach the required documents as proof of his numbers, as required by section 501 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/501 (West 2020)).

¶ 11     On May 12, 2023, after the last pending nonmonetary matter in the case had been concluded, the court set all the remaining monetary pleadings for hearing on August 21, 2023. On August 7, 2023, in advance of the all pending hearing, Della filed a position statement regarding the motion for additional child support (true-up). The statement contained Della's proposed calculations for the child support true-up, covering the timeframe of 2016 through 2022. It also contained a request that the court impute income to Dennis for the years 2017 through 2022, as Della felt he was not being forthcoming with his true financial information. Then, on August 21, 2023, Dennis filed a response to Della's position statement. In it, he denied that he had not been forthcoming with his financial information or practices and provided his own calculations of past-due child support for each of the years contained in Della's statement.

¶ 12     On August 21, 2023, the court held a hearing on all pending motions, except the motion to modify child support, which was filed by Dennis on July 12, 2023, after the court had set the hearing date. At the start of the hearing, the trial court asked Della's attorney what petitions she believed were currently pending, to which Della's attorney gave the trial court the following motions: (1) November 17, 2016, petition for contribution of attorney fees[5]; (2) August 7, 2017, motion for payment of additional child support (true-up); (3) December 5, 2018, subsequent petition for contribution of attorney fees[6]; (4) July 24, 2019, petition for attorney fees (related to previous unsuccessful appeal by Dennis); (5) February 23, 2021, petition for rule to show cause

---

[5]This motion is not at issue in this appeal.
[6]This motion is not at issue in this appeal.

(related to unreimbursed medical expenses)[7]; and (6) March 11, 2023, motion for sanctions (related to the filing of an inaccurate financial affidavit).

¶ 13    The trial court then asked Dennis if the matters Della's attorney stated she believed were pending before the court matched what he believed was still pending. In response, Dennis stated that he believed Della's attorney intended to seek a true-up not only for 2016, but for every year through 2021. He stated that this was improper because he had not received proper notice, as only a pleading for 2016 (the motion for payment of additional child support) was on file, and none were on file for the years 2017 through 2021. Following Dennis's statement, the court then reiterated the petitions Della's attorney stated were pending, and Dennis agreed that they were all pending. The court then proceeded with the pending matters.

¶ 14    The first matter relevant to this appeal heard by the trial court was Della's July 24, 2019, petition for attorney fees related to the 2016 appeal. After the trial court called the petition, Della's attorney noted that the petition for fees had been filed on three different occasions, as there had been some confusion due to the attorney leaving the firm during the pendency of the case, but that she was fine proceeding on the original July 24, 2019, petition. Dennis neither objected to nor addressed the issue, so the court proceeded on the July 24, 2019, petition.

¶ 15    The hearing on the petition began with Della's attorney calling Della to testify. During cross-examination of Della, Dennis attempted to introduce evidence of the parties' relative financial positions at multiple times other than when the appeal was taken. Della's attorney objected, and the trial court sustained the objection, stating that it was considering only the

---

[7]This motion is not at issue in this appeal.

timeframe of when the appeal was taken, and therefore the scope of evidence was limited to around 2016. The trial court then finished hearing the cross-examination testimony of Della.

¶ 16    The trial court then heard the direct examination of Dennis. During the cross-examination of Dennis, the trial court determined that it would be unable to hear everything in the allotted time that day, and it continued the matter until November 13, 2023, directing that the cross-examination of Dennis would resume at that time.

¶ 17    On November 13, 2023, the trial court resumed its hearing from August 21, 2023, on the matter of the July 24, 2019, petition for attorney fees. Prior to continuing with his cross-examination testimony, Dennis brought to the trial court's attention that the court had been proceeding in the prior hearing under the petition for attorney fees filed July 24, 2019. He stated that the proper pleading to proceed under would be the most recent amended petition filed, which was filed on February 8, 2021. Dennis explained that he had only filed a response to the February 8, 2021, petition and that it was important to proceed under that petition because the timing of the different petitions was germane to determining the parties' ability to pay, as their finances had changed over time.

¶ 18    In response, the trial court reiterated its intent to continue proceeding on the July 24, 2019, petition for attorney fees as it believed the pleadings were duplicative. The trial court then asked Della's attorney if she wished to withdraw her other two pending petitions for attorney fees related to the previous appeal (filed January 27, 2021, and February 8, 2021), and she stated she would. The trial court then resumed hearing Dennis's cross-examination testimony on the matter. At the conclusion of his cross-examination testimony, Dennis called Della to testify as an adverse witness, after which she was cross-examined by her own attorney. Of note, during her testimony on cross-examination, Della testified that she was not drawing social security on her own behalf

and that the money she received from social security was related to the dependent child-in-care benefit for having the parties' shared children under 16 in her custody. At the conclusion of the testimony on the matter, the trial court announced an oral ruling in favor of Della and against Dennis in the amount requested in the petition.

¶ 19    The next matter relevant to this appeal heard by the trial court was Della's March 11, 2022, motion for sanctions against Dennis for filing an inaccurate financial affidavit. Della's attorney began by calling Dennis to testify about his financial affidavit. Following her questioning of Dennis, Dennis testified on his own behalf. At no point during the testimony did Dennis bring to the trial court's attention that the motion for sanctions had been heard on March 14, 2022, and denied on March 15, 2022. The court then issued another ruling from the bench against Dennis in favor of Della. The trial court then heard other pending matters not at issue in this appeal. At the conclusion of the hearing, the trial court ordered the parties to revise their proposed support calculations and continued the remaining matters to January 8, 2024.

¶ 20    On December 4, 2023, the trial court issued a written order ruling on the motion for attorney fees filed July 24, 2019,[8] related to the 2016 appeal, and the motion for sanctions filed March 11, 2022, related to the filing of a false financial affidavit. With respect to the attorney fees petition, the trial court required Dennis to pay $13,964.27, the full amount requested by Della. In doing so, the trial court noted in its order that it found Dennis's testimony that he would walk away from an equity ownership in a law firm and retained earnings incredulous. With respect to the motion for sanctions related to the inaccurate financial affidavit, the trial court found that Dennis either

---

[8]We note that in the original December 4, 2023, order, the court stated it was ruling on the January 27, 2021, petition for fees; however, this was amended *nunc pro tunc* to the July 24, 2019, petition in the February 22, 2024, order denying Dennis's motion to reconsider.

intentionally or recklessly filed a false and inaccurate financial affidavit on March 8, 2022, and ordered Dennis to pay Della $2,500 in recompense.

¶ 21    On January 3, 2024, Dennis filed a motion to reconsider the trial court's December 4, 2023, order. With respect to the petition for attorney fees related to the 2016 appeal, he argued that by filing the superseding petitions, and specifically the amended petition, Della had abandoned and withdrawn her prior petitions for attorney fees related to the previous appeal, and they ceased to be part of the record; thus, the trial court could not proceed on them. With respect to the petition for sanctions arising from the filing of an inaccurate financial affidavit, Dennis argued that the trial court had reached incorrect factual conclusions, citing the tax code, and urged the trial court to reconsider. He did not bring to the trial court's attention that it had previously ruled on the motion, denying it on March 15, 2022, nor did he allege that the affirmative defense of *res judicata* applied to bar the trial court from hearing the motion.

¶ 22    On January 8, 2024, the trial court resumed its hearing on all pending motions, stating that the matters it believed were still pending were: the February 3, 2021, petition for rule of nonpayment of medical expenses; the August 7, 2017, motion for payment of additional child support (true-up) for the period of January 1, 2016, through July 11, 2023; the July 12, 2023, petition to modify child support filed by Dennis; and Dennis's new January 3, 2024, motion to reconsider the December 4, 2023, order. Both parties indicated their agreement with the trial court regarding what was still pending; however, Dennis made an oral motion to withdraw the petition to modify filed July 12, 2023, which was granted. The trial court then resumed hearing testimony related to the petition for medical expenses and the petition for additional child support.

¶ 23    During this hearing, the social security benefits being paid on behalf of Dennis to Della was revisited. Della again testified that she was receiving dependent benefits from social security

9

that were the result of Dennis's contributions. She further testified that she took an early retirement in 2021, and when she did so, she filed for the dependent child-in-care benefit from social security. She testified that she did so, expecting an increase in the amount of money she would receive from social security, but because Dennis's social security dependent benefits were already being drawn at the maximum rate due to another ex-wife, the total amount she and the children received did not change. Instead, the amount they were receiving from Dennis's contributions was distributed three ways instead of just being split between the two children. Further testimony about the pending matters was then heard; however, it was not germane to the disposition of this case on appeal. At the conclusion of the hearing, the trial court requested that the parties file proposed orders related to the two remaining matters before the court.

¶ 24    On February 22, 2024, the trial court denied Dennis's January 3, 2024, motion to reconsider. In its order, the trial court stated that it was upholding the award of attorney fees because Dennis was unsuccessful in his 2016 appeal. It also stated that although multiple petitions were filed and the court proceeded on the earliest one, the petitions were all nearly identical in their prayers for relief. The trial court further ruled that it was upholding its award of sanctions related to the inaccurate financial affidavit because the court found Dennis was inconsistent and evasive during his testimony, that there was a $4,000 discrepancy unaccounted for, and that, accordingly, it believed Dennis either intentionally or recklessly filed a false financial affidavit.

¶ 25    On March 4, 2024, the court entered an order on the two remaining matters. The first matter was the rule to show cause as to why Dennis had not reimbursed Della for the children's medical expenses, as required by the parties' marital settlement agreement, and is not at issue in this appeal.

¶ 26    The second matter addressed in the order was related to the motion for additional child support (true-up). Pertinent to the disposition of this case on appeal, as part of the true-up, the trial

10

court was required to find the amount of credit that Dennis should receive for child support already paid. In its order, the trial court found that only the social security (SSI) dependent allotment Della received for the minor children would be credited to Dennis as child support paid. The trial court did not credit Dennis with the social security (SSI) dependent child-in-care benefit that Della received pursuant to Dennis's social security contributions, but which she received only because she had custody of the parties' shared children. The order also contained the trial court's preliminary findings of the past-due support requested by the motion for additional child support (true-up). At the end of its order, the trial court ordered Della's attorney to file a proposed order for the complete amount of past-due support and include statutory interest in the final figures. This was done, and the trial court entered the order on April 4, 2024, consistent with its preliminary findings in the March 4, 2024, order.

¶ 27    On March 21, 2024, Dennis filed a notice of appeal for the trial court's December 4, 2023, order and the subsequent denial of the motion to reconsider the December 4, 2023, order on February 22, 2024 (5-24-0405). Later, on April 30, 2024, Dennis filed a notice of appeal for the trial court's April 4, 2024, order (5-24-0593). Both appeals were then consolidated in this case on July 11, 2024.

¶ 28                                    II. ANALYSIS

¶ 29    On appeal, Dennis raises seven claims of error in total.[9] The first two claims, which are not directly related to Dennis's child support, are that the trial court erred when it (1) allowed Della to proceed on the July 24, 2019, petition for attorney fees related to the 2016 appeal instead of the more recent February 8, 2021, amended petition for the same; and (2) granted Della's March 11,

_____

[9]We note that Dennis has not consistently maintained the numbering of his claims of error on appeal, and therefore we will address them in an order that is conducive to this court's analysis and disposition of the claims on appeal.

11

2022, motion for sanctions related to the filing of an inaccurate financial affidavit, after previously denying the motion.

¶ 30 Meanwhile, Dennis's claims of error three through seven, which are related to Dennis's child support, are that the trial court erred when it (3) held a hearing on the motion for additional child support (true-up) for past-due child support amounts from 2017 through 2022 when the pleading was only for the year 2016; (4) included as income the $10,108 appellant put into a retirement account, the $8,000 he withdrew from the same account, and the $13,500 he received as a travel allowance from his job; (5) did not give Dennis credit against his owed child support balance for the social security derivative dependent child-in-care benefit received by Della for having their shared children under 16 in her care; (6) modified the parties' marital settlement agreement by imputing income to himself based on his 2016 earnings for the years 2017 through 2022; and (7) awarded statutory interest on the additional child support amount.

¶ 31 A. Non-Child Support Related Claims of Error

¶ 32 1. *Petition for Attorney Fees From the 2016 Appeal*

¶ 33 We begin our analysis of Dennis's claims of error by evaluating his two non-child support related arguments. First, Dennis argues that the trial court erred when it allowed Della to proceed on her choice of the July 24, 2019, petition for attorney fees pursuant to section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(a)(3) (West 2018)) (which permits attorney fees upon successful defense of an appeal in family cases) when she had filed successive petitions on January 27, 2021, and February 8, 2021. Whether the court properly allowed a plaintiff to dismiss an action is subject to review under an abuse of discretion standard. *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 19 (2009). Dennis argues that Della should instead have been required to proceed on her last pleading, the amended petition for

12

attorney fees, that she filed on February 8, 2021, and to which he had filed an answer. In support of his contention, Dennis directs us to *W.P. Iverson & Co. v. Dunham Manufacturing Co.*, 18 Ill. App. 2d 404, 425 (1958), which stated that

> "it has been held that an amendment complete in itself, which does not refer to or adopt the prior pleading, supersedes it and the original pleading ceases to be a part of the record, being in effect abandoned or withdrawn, with the result that the subsequent proceedings in the case are to be regarded as based upon the amended pleading, which will not be aided by anything in the prior pleadings."

¶ 34 Della counters, arguing that while it might have been in error to proceed on the first motion instead of the third, such an error would be procedural, which means the error must have prejudiced the rights of the complaining party in some significant manner, and because the motions were substantially similar, there was no prejudice. In support of her contention, she directs our attention to *In re Marriage of Brown*, 86 Ill. App. 3d 964, 968-69 (1980), where the court found as follows:

> "The thread running through the cases cited by respondent in support of his position indicates that notice defects become fatal when, as a result of the defects, the opposing party is prejudiced in some significant manner. [Citations.]
>
> While notice provisions provided by rules of court should be strictly applied, such rules should not be used as a technical means of disqualification to keep litigants from trying their cases. [Citation.] It is when the defective notice creates prejudice that it should be applied. [Citations.]"

¶ 35 We also take notice here of Dennis's point elsewhere in his brief that Illinois courts have held that the purpose of pleadings "is to give notice to the court and to the parties of the claims being presented." (Internal quotation marks omitted.) *Cable America, Inc.*, 396 Ill. App. 3d at 19.

13

¶ 36    In his reply, Dennis responds to Della's argument, stating that he suffered prejudice, because their incomes in 2019, when the first petition was filed, were different from their incomes in 2021, when the third successive petition was filed. He claims at the time the third petition was filed, he was retired and no longer made three times more than her. As a result of this mistake, he argues the trial court considered the wrong evidence during the hearing.

¶ 37    We note, however, that upon our review of the record, it appears that the court looked to the time when the appeal was taken to determine who should have to pay for the appeal. It limited the scope of evidence it heard to the 2016 timeframe, which is when the appeal was taken and the fees accrued, not the timeframe in which any of the petitions were filed. Further, we note that the trial court's findings on the parties' ability to pay were that Dennis had committed waste, with the trial court specifically finding in its order that it was "incredulous" that "he would walk away from an equity ownership in a law firm and retained earnings."

¶ 38    Thus, although it may have been error for the trial court to proceed on the July 24, 2019, petition instead of most recent February 8, 2021, amended petition, here the trial court did not look to the timeframe of the petitions, but instead looked to the timeframe of the appeal. By looking to the timeframe of the appeal, which did not change between the petitions, there is no prejudice suffered, as Dennis had adequate notice of the cause before the court and the result from any of the three petitions would have been the same. Remanding for the purposes of proceeding on the July 24, 2019, petition as opposed to the amended February 8, 2021, petition would not substantially change the underlying reasoning, timeframe, or findings of the trial court on the petition. "To remand this case for proceedings to conform with [the procedural requirements] would occasion delay and waste *** judicial resources," and we therefore decline to do so. *Janes v. First Federal Savings & Loan Ass'n of Berwyn*, 57 Ill. 2d 398, 407 (1974).

14

¶ 39        2. *Motion for Sanctions Related to an Inaccurate Financial Affidavit*

¶ 40    Dennis's second and final non-child support related argument on appeal is that that the trial court's December 4, 2023, order granting Della's March 11, 2022, motion for sanctions related to the filing of a false financial affidavit was in error, because it had been previously heard by the trial court on March 14, 2022, and denied in an order the following day. Thus, Dennis argues the doctrine of *res judicata* should have barred the court from rehearing the issue. As *res judicata* involves a question of law, we review this issue *de novo*. *Ertl v. City of De Kalb*, 2013 IL App (2d) 110199, ¶ 17.

¶ 41    In support of his claim of error, Dennis directs our attention to *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008), to show that *res judicata* should apply:

> " 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action.' [Citation.] *Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided. [Citation.] Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. [Citation.]"

Dennis also argues in his brief that "[a] judgment is void where the court lacked jurisdiction over the parties or the subject matter," citing *In re Marriage of Florence*, 260 Ill. App. 3d 116 (1994); however, he does not expound on his reasoning beyond making this citation.

¶ 42    In response to his claim of error, Della argues that Dennis failed to properly object or raise the doctrine of *res judicata* at the hearing, and that because *res judicata* is an affirmative defense,

15

failure to raise it properly before the trial court results in waiver on appeal. In support of her position, Della directs this court's attention to *Roberts v. Burdick*, 2021 IL App (5th) 190119, ¶ 43, which held on the issue of *res judicata* as follows:

> "Assuming *arguendo* that Roberts has demonstrated the requirements for *res judicata*, the doctrine is not a jurisdictional bar. *Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 578, (1998). It is an affirmative defense, which can be waived. See 735 ILCS 5/2-619(a)(4) (West 2020) (involuntary dismissal based on certain defects or defenses including that the cause of action is barred by a prior judgment); see also *Village of Maywood*, 296 Ill. App. 3d at 578 (*res judicata* is an affirmative defense which can be waived, unlike subject-matter jurisdiction). Roberts did not raise *res judicata* in the circuit court proceeding and, thus, has waived consideration of the issue on appeal. Based on the foregoing, we find Roberts has failed to demonstrate that SERS's appeal should be dismissed for lack of jurisdiction."

¶ 43    Upon our review of the record, we first note that it is unclear exactly which motion for sanctions was denied by the trial court on March 15, 2022. It appears from the record that there may have been other petitions for rule to show cause or motions for sanctions pending before the trial court, and we do not have a report of proceedings for the hearing on March 14, 2022, to inform us as to which one was called. Additionally, the order denying the motion fails to shed light on the matter, as the order simply reads "7. Petitioner's Motion for Sanctions is DENIED." Thus, the record is not complete as to this issue, and we note that where the record is not complete, the absence of any pertinent portion of the record is to be construed against the appellant. *Ittersagen v. Advocate Health & Hospitals Corp.*, 2020 IL App (1st) 190778, ¶ 7. However, as Della does not

16

dispute in her brief that this was the same motion, and even taking as true that it was the same motion, Dennis does not prevail, so we will address the merits of his argument anyway.

¶ 44   We do not find any instance where Dennis asserted the doctrine of *res judicata* before the trial court in relation to the sanctions motion. Prior to the hearing, while he objected to whether other issues were pending, he did not object to the assertion by Della's attorney that this motion for sanctions was still pending. During the hearing on the issue, he participated in the hearing and did not argue or bring to the trial court's attention that the motion had already been ruled on. Nor was the doctrine of *res judicata* brought up in his motion to reconsider the trial court's ruling after the hearing. Additionally, in his reply to Della's waiver argument, Dennis does not appear to argue that he raised the affirmative defense of *res judicata*, only that we should retroactively apply it.

¶ 45   Regarding Dennis's incomplete argument that the court lacked jurisdiction, as noted above, *res judicata* is an affirmative defense, not a jurisdictional bar. Additionally, we note that in *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1025-26 (2003), the First District stated as follows :

> "Under Rule 304(b)(5), an order finding a person in contempt and imposing a monetary or other penalty is immediately appealable. [Citation.] The time for appealing Rule 304(b) orders is mandatory, not optional. [Citation.] Contempt citations along with all other orders falling within the scope of Rule 304(b) must be appealed within 30 days of their entry or be barred. [Citation.]
>
> However, in order for the appellate court to assume jurisdiction, the contempt order must impose sanctions of some kind upon the contemnor. [Citations.] It is the imposition of the sanction that is final and appealable. [Citation.]"

17

Since the trial court in this case declined to impose sanctions against Dennis for his discovery violations in its original order on March 15, 2022, the order denying sanctions was not a final appealable order under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), and jurisdiction over the issue was not removed from the purview of the trial court.

¶ 46    Therefore, upon our review of the record, the pleadings, and the law, we find that the trial court did not lack jurisdiction over the issue of sanctions for Dennis's inaccurate financial affidavit because it had not previously issued sanctions for the same conduct. We also find that Dennis waived the affirmative defense of *res judicata* by failing to raise the doctrine or bring to the trial court's attention that it had already ruled on the motion.

¶ 47                    B. Child Support Related Claims of Error

¶ 48                    3. *True-Up Years Pending Before the Trial Court*

¶ 49    Turning now to Dennis's child support related claims of error, his third argument is that the trial court erred when it held a hearing on the motion for additional child support (true-up) for past-due child support amounts from 2017 through 2022 when the pleading on file before the court was only for the year 2016. He argues that because only 2016 was pled, and 2017 through 2022 were not, he lacked adequate knowledge of what would be at issue during the hearing.

¶ 50    Della responds, arguing that Dennis waived this argument by agreeing with the trial court on the record that the timeframe of 2016 through 2022 was what was pending before the court, and that if the issue was not waived, then the error was harmless as Dennis otherwise had proper notice of what was pending as he had knowledge from other filings that those years were before the court as well. The construction of a statute is a question of law that is reviewed *de novo. Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 18.

18

¶ 51    Upon review of the record, we find that it is unclear as to whether a waiver has occurred, because it is not clear from the record exactly what Dennis was agreeing to.[10] However, we need not reach the question of waiver in disposing of this claim of error, as, even on the merits of his argument, Dennis does not prevail. As we stated in evaluating his first claim of error, the purpose of Illinois's pleading requirements is to provide notice to the court and the parties of the issues that are pending. *Cable America, Inc.*, 396 Ill. App. 3d at 19. Violations of the notice rules become fatal only when they create prejudice against the opposing party and should not be used as a technical means to disqualify otherwise valid causes. *Brown*, 86 Ill. App. 3d at 968-69.

¶ 52    In evaluating whether the defective pleading created prejudice in this case, we note the Second District in *In re Marriage of Solecki*, 2020 IL App (2d) 190381, ¶ 47, found that the filing of true-up calculations can be enough to place the other party on notice of what is being sought. Here, prior to the hearing, Della filed proposed true-up calculations for the period of 2016 through 2022, and Dennis responded with his own proposed calculations covering the same timeframe, with no objection as to notice. Additionally, prior to the parties filing their proposed calculations, the trial court entered an order setting all pending matters and required financial information for all the years in dispute. Such should reasonably put Dennis on notice that the years for which the trial court requested information would be placed at issue during the hearing. Therefore, we find there was no prejudice, and that remanding this case for further proceedings would only occasion delay and waste valuable judicial resources; accordingly, we decline to do so. *Janes*, 57 Ill. 2d at 407.

---

[10]In the testimony Della cites to for her waiver argument, it is unclear whether Dennis's statements are an agreement that 2017-2022 are properly pending, or if he is agreeing that the court has ruled that the years 2017-2022 are properly pending but not conceding the issue itself.

19

¶ 53         4. *Inclusion of Profit Sharing and Travel Allowance in Income*

¶ 54    Dennis's fourth claim of error on appeal is that the trial court erred when it included (1) a $10,108 contribution to Dennis's retirement profit-sharing account; (2) an $8,000 withdrawal from the retirement profit-sharing account; and (3) a travel allotment/reimbursement for $13,500. The determination of income is a factual question we review for abuse of discretion. *In re Marriage of Rogers*, 345 Ill. App. 3d 77, 79 (2003).

¶ 55    We begin our analysis of this claim or error by first looking at the retirement profit-sharing account. Dennis claims that it was in error for the trial court to consider the money in this account as income, as generally, retirement income is not considered in calculating income for child support purposes. Della counters, arguing that at no point during the trial did Dennis indicate the profit-sharing account was a retirement account.

¶ 56    The record on appeal indicates the trial court, in a previous order concerning true-ups entered October 18, 2016, found that the profit-sharing account was income. The law of the case doctrine would not preclude reconsideration of an earlier judge's order if the facts before the court have changed or if error or injustice were manifest. *Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.*, 284 Ill. App. 3d 627, 633 (1996). However, Dennis does not direct our attention to any place in the record showing where the nature of the account has changed since that determination was made in the court's previous order. He does not point to any part of the record where he attempted to inform the trial court of its error in treating the profit sharing as income rather than as a retirement account. Nor does he point to anywhere in the record to show where he informs the trial court that the $8,000 withdrawn from the E-Trade Account was the same account as the retirement profit-sharing account. Instead, he directs our attention to various filings that list the account as a

20

retirement account and testimony where he states he deferred receipt of the funds for tax purposes, but he does not show where he ever explicitly attempted to correct what he now claims as an error.

¶ 57 It is well established that "[a] party cannot sit idly by while the trial court undertakes a course of action and then allege error in that regard." *Tokar v. Crestwood Imports, Inc.*, 177 Ill. App. 3d 422, 434 (1988). Therefore, because Dennis is unable to point to where in the record he objected to this course of action, and the issue has been previously litigated, we find that he failed to object in the trial court and has consequently not preserved the issue for appeal. Thus, we cannot say the court committed an error in ruling in line with previous rulings in the case.

¶ 58 Turning now to his claim as it relates to the travel allotment/reimbursement, we note that this too was previously counted as income by the court in its October 18, 2016, order. Dennis argues that because he spent more than the amount of the allowance on travel for work, it should not have been counted as income. In support of his contention, he cites *In re Marriage of Worrall*, 334 Ill. App. 3d 550, 555 (2002), which stated:

"We see no reason why the amount of support a parent pays should depend on notations on his pay stub that are simply designed to obtain advantageous tax treatment. To permit such a result would exalt form over substance. We therefore conclude that *per diem* allowances for travel expenses generally constitute income for the purpose of calculating child support. This income, however, is subject to reduction to the extent that the child support payer can prove that the *per diem* was used for actual travel expenses and not for his or her economic gain."

¶ 59 Della responds, pointing out that the court in *Worrall* went on to state that "the burden should have been placed on [respondent] to prove his actual expenses for meals and lodging and to establish a lawful basis for deducting them from his income." *Id.* at 556.

21

¶ 60    In including the travel allowance as income, the trial court found that Dennis did not meet his burden of proof. Additionally, as with the profit-sharing account, Dennis does not argue that the facts underlying the trial court's prior determination that the travel allowance was income have changed sufficiently for the court to revisit the issue. Therefore, we find that no reversible error has occurred where the trial court's ruling was in line with previous rulings finding that the travel allowance was income, where Dennis has not alleged sufficient change in circumstances, and where the trial court found Dennis did not sufficiently prove his expenses.

¶ 61                    5. *The Dependent Child-in-Care Credit*

¶ 62    Dennis's fifth claim of error is that the trial court erred when it did not give him credit against his owed child or medical support balance for the dependent child-in-care social security derivative benefit paid to Della for having their shared children under 16 in her care. He contends that, because the benefits were paid out of his social security contributions to Della for the benefit of the children, and without the children, she would not otherwise receive or qualify for the payment, it should be counted under Illinois precedent as money towards his child support obligation. Because the question of who earned the dependent child-in-care benefit is a question of fact, we review the issue under an abuse of discretion standard. *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 901 (1999).

¶ 63    We begin our analysis of Dennis's claim with *In re Marriage of Henry*, 156 Ill. 2d 541 (1993), in which the Illinois Supreme Court weighed in on the question of whether the payment of a social security disability (SSD) dependent's benefits on behalf of the obligated parent satisfied the parent's child support obligation. The court held that they did, stating:

    "Eligibility for social security benefits and the amount of such benefits depends on 'the

    earnings record of the primary beneficiary.' [Citation.] Thus, social security dependent

22

disability benefits are not gratuitous [citations], but are generated by the noncustodial parent through his labor and earnings.

The sole and express purpose of social security dependent benefits is to support dependent children. [Citation.] *** Social security dependent disability benefits replace support the child loses upon the disability of the wage earner responsible for the child's support [citation], and such benefits substitute for a parent's loss of earning power and obligation to support his dependents [Citation.] Thus, the source and the purpose of social security dependent benefits are identical to the source and purpose of child support—both come from a noncustodial parent's wages or assets and both provide for the needs of the dependent child [citation], and, for our purposes, 'no principal distinction exists between social security benefits and child support payments' [citation]." *Id.* at 550-52.

Therefore, the payment of social security dependent disability benefits satisfies a noncustodial parent's child support obligation. *Id.* at 552.

¶ 64    Della does not appear to dispute that this reasoning would also apply here to the dependent child-in-care retirement benefit, but instead argues that the benefits paid were not from Dennis's social security contributions but from her own. Thus, the question is whether the dependent child-in-care benefit payments at issue were attributable to Dennis's contributions or Della's.

¶ 65    We find Della's assertion that they were paid out of her contributions to be disingenuous. Della's citation to the report of proceedings to support her argument that it is her benefit, not his, appears in actuality to be an admission that the opposite is true, that she was claiming dependent benefits under Dennis's social security earnings.

"A. *** The social security guidelines allow for up to 150 percent of the covered person's benefit to be paid in a total family benefit. So I anticipated that our total benefit

23

would increase by 50 percent. That did not end up being the case because there was another person who was drawing on Mr. Field's benefit and that amount that that person was receiving plus the amount that our two dependent children were receiving already totaled 150 percent."

Additionally, during the redirect examination, an exchange took place between Della and her attorney, in which her attorney asked her if, in 2021, she began drawing social security on her own behalf. In response to this question, Della said "no" and went on to largely repeat her earlier testimony to the court that she applied under Dennis's dependent benefits. Therefore, we find that the trial court erred when it failed to properly credit Dennis for the amount of dependent child-in-care benefits that were paid on his behalf to Della. Accordingly, we must remand this issue to the trial court for recalculation of Dennis's child support.

¶ 66                                6. *Imputation of Income*

¶ 67     Dennis's sixth claim of error is that the trial court erred when it modified the parties' marital settlement agreement by imputing his 2016 income to the years 2017 through 2022. Dennis argues that, under the parties' agreement, the trial court lacked authority to impute income to him. Instead, under the marital settlement agreement, he argues that he was required to pay Della a base amount of $1,300 per month. In addition to the base amount, he was required to pay additional child support so that at the end of the year, his total child support equaled 28% of his total net income, as defined by the Illinois Marriage and Dissolution of Marriage Act. He therefore argues that in imputing income to him, the trial court modified the agreement because he is no longer paying 28% of his actual net income, as originally agreed.

¶ 68     In response, Della argues that courts have the ability to impute income when a party improperly lowers their earnings to a level below their potential or where the income of one of the

24

parties is difficult to obtain. She further argues that this is exactly what Dennis did here: he lowered his income below his earning potential and hid his earnings, and thus, the trial court was well within its lawful powers when it imputed income to him for the years 2017 through 2022.

¶ 69    We begin our analysis by noting that "[a] marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement. [Citations.] The interpretation of a marital settlement agreement is reviewed *de novo* as a question of law. [Citation.]" *Blum v. Koester*, 235 Ill. 2d 21, 33 (2009). The determination of net income is reviewed under an abuse of discretion standard. *In re Marriage of Gosney*, 394 Ill. App. 3d 1073, 1077 (2009). Further,

> "[w]hen the terms of the marital settlement agreement are unambiguous, a reviewing court determines the parties' intent solely from the plain language of the agreement. [Citation.] An agreement is unambiguous when it contains language susceptible to only one reasonable interpretation. [Citation.] However, [l]anguage is not ambiguous merely because the parties do not agree on its meaning." (Internal quotation marks omitted.) *In re Marriage of Doermer*, 2011 IL App (1st) 101567, ¶ 27.

¶ 70    Thus, the first question we must answer is whether the imputation of income is permitted under the current version of the marital settlement agreement. In support of her argument that it is, Della directs our attention to two cases. The first is *In re Marriage of Sweet*, 316 Ill. App. 3d 101 (2000), and the second is *In re Marriage of Gosney*, 394 Ill. App. 3d 1073 (2009). We note, however, that both of these cases are in the context of modifications and thus do not demonstrate that imputation of income can be done in the context of an existing order.

¶ 71    Further, nowhere in the language of the marital settlement agreement is imputation of income mentioned or considered. Instead, the language "[h]usband shall pay 28%, less the monthly

25

base amount of child support so that husband's child support each year shall be 28% of his statutory net income" makes it clear that parties meant for the additional child support to be based on his actual statutory net income. Therefore, we find that the agreed upon language is clear and controlling, and thus, in order to impute income, there must be a modification of these terms.

¶ 72 Consequently, the second question we must answer is whether the motion for additional child support is a motion to modify or a motion to enforce the existing agreement. We find that it was a motion to enforce and not a motion to modify. While the name of the motion appears to be a motion to modify, we find that the name mirrors the agreed terms used by the parties in drafting the marital settlement agreement. In the agreement, the parties used the term "base support" to describe the $1,300 per month and said "in addition husband shall pay" a percentage of his total statutory net income minus the base amount. It is that additional percentage that is placed at issue in the motion.

¶ 73 Additionally, the substance of the motion itself is insufficient to serve as a motion to modify. Pursuant to section 502 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/502 (West 2022)), child support is modifiable upon a showing of substantial change. Here, there is nothing in the motion alleging any change of circumstances. Instead, the language of the motion specifically asks for relief "pursuant to the terms of the parties' Marital Settlement Agreement."

¶ 74 Accordingly, because the parties' marital settlement agreement did not permit the imputation of income to Dennis, and the motion is not a motion to modify the existing agreement to allow the imputation of income, we find that the court committed reversible error when it imputed income to Dennis. As such, it also abused its discretion in determining his income. Therefore, we reverse the trial court's imputation of income to Dennis for the years 2017 through

26

2022, and we remand the issue for redetermination of Dennis's income based on his actual earnings for each of those years.

¶ 75                                    7. *Statutory Interest*

¶ 76    Dennis's seventh claim of error is that the trial court erred when it imposed statutory interest on the additional child support. While the issue of interest will need to be remanded with the case to be recalculated after the trial court has properly recalculated Dennis's past-due child support, his argument on appeal is not that the court erred in its calculation of the interest, but that it erred when it imposed any interest on the additional child support amount. Therefore, we will address how interest should be properly applied in this case. The trial court's findings as to the amount of interest is a question of fact, subject to review under an abuse of discretion standard. *In re Marriage of Tegeler*, 365 Ill. App. 3d 448 (2006). However, issues of statutory interpretation are subject to *de novo* review. *Id.*

¶ 77    Dennis argues that statutory interest should not be applied because in *Tegeler* the court found that the petitioner was not entitled to back child support until the trial court awarded such, and thus back child support could not be an "overdue obligation" subject to statutory interest. *Id.* at 462. In doing so, the court in *Tegeler* distinguished between *back child support* (support for the time prior to the entry of the order) and *overdue child support* (support after the entry of the order that has not been paid). *Id.* Dennis argues that the "additional child support" of the parties' marital settlement agreement was more similar to back child support than overdue child support, as there was no formal order setting the amount due or the due date, and was therefore more akin to support for a time prior to the entry of the order.

¶ 78    Della counters, arguing that the amount is overdue child support (or past-due child support) and therefore is subject to statutory interest. She argues that the marital settlement agreement

27

established that the additional child support (true-up) amounts were due by March 31 of the following year (*i.e.*, additional child support amount for 2016 would be due March 31, 2017). Therefore, because it is due on March 31, it would begin accruing interest on April 31 and would continue accruing interest at the statutory rate until it was paid.

¶ 79　We begin our analysis by noting that interest on past-due child support in Illinois is governed by section 505 of the Illinois Marriage and Dissolution of Marriage Act, which states in relevant part:

> "Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order." 750 ILCS 5/505(d) (West 2022).

Additionally, we note that

> "[a] support obligation, or any portion of a support obligation, which becomes due and remains unpaid as of the end of each month, excluding the child support that was due for that month to the extent that it was not paid in that month, shall accrue simple interest as set forth in Section 12-109 of the Code of Civil Procedure. *** Failure to include [a statement about interest] in the order for support does not affect the validity of the order or the accrual of interest as provided in this Section." *Id.* § 505(b).

¶ 80　We further note that, as in our discussion of whether the court could impute income to Dennis, the plain language of the marital settlement agreement controls. See *Doermer*, 2011 IL App (1st) 101567, ¶ 27. The operative portion of the marital settlement agreement reads as follows:

28

"To effectuate the terms hereof, husband agrees to provide wife with his properly completed federal and state tax returns, as well as the tax return for his business corporation, each year by March 31st."

The plain language of the agreement does not assign a due date to the additional child support. Instead, it only provides that Dennis must turn over to Della his tax return information on or before March 31 of each year, so that the amount of additional support may be calculated. Thus, we cannot say that the additional child support is past due where there was no due date prescribed in the marital settlement agreement.

¶ 81 Therefore, while Illinois law provides that statutory interest applies to this case irrespective of the parties' agreement, as it does in every case, it only applies to past-due amounts. Because the trial court applied interest to the additional child support prior to a time when it was due, it committed an abuse of discretion by misapplying the law. Accordingly, we reverse the trial court's findings on the amount of interest due. On remand, the statutory interest would be correctly considered to commence 30 days after the due date set by the court for the payment of the additional child support due and owing. See *Tegeler*, 365 Ill. App. 3d at 462. Thus, we reverse and remand this issue for the limited purpose of recalculating the amount of interest owed, if any, after the court has properly calculated the amount of additional child support due and owing.

¶ 82                                    III. CONCLUSION

¶ 83 For the foregoing reasons, we affirm the trial court's December 4, 2023, and February 22, 2024, orders. As to the March 4, 2024, order and the April 4, 2024, order, we affirm, in part, and reverse, in part.

¶ 84 Affirmed in part and reversed in part; cause remanded with directions.